# EXHIBIT I

March 1, 2024 Demand Letter

Friday, March 1, 2024


FROM:      MR. THOMAS GAVIN
             Chief Executive Officer / Vice Chairman
             CC TECHNOLOGY CORPORATION

TO:          CAPITAL PURE ASSETS, LTD
             ATTENTION: MRS HANNAH DAWN PRAKASH, CEO
             SHIVA PRAKASH
             VIKHYAT PRAKASH
CC:         ESCROW AGENT, ATTORNEY JAMES CHRISMAN


## **DEMAND LETTER**


A)      On June 26th, 2023, our company CC TECHNOLOGY CORPORATION entered a JV contract with your company CAPITAL PURE ASSETS, LTD., that agreed to provide us with an SBLC financial instrument worth $50 million to be monetized through you within 21 days for $20 million to our benefit. We placed $336,000.00 into escrow with Escrow Agent Attorney James Chrisman with the escrowed funds specifically earmarked for "bank processing fees" to begin immediately with the processing of a STANDBY LETTER OF CREDIT, ("SBLC") to finance our business.

SECTION 2: RECITALS

Whereas JV Partners stipulates that it has various projects and businesses under management. JV PARTNERS group is confident in its portfolio projects companies which include CC Technology. Investor to extend clean collateral in the form of bank guarantees from prime Banks to assist JV Partner's capital needs.

Whereas JV partners stipulates that it is ready, willing, and able to receive this cash pool generated by Inventors' collaterals with the cumulative face value of Fifty Million United States Dollars ($50,000,000) SBLC (the "Standby Letter of Credit") in exchange for the full suite of services, issuance, and monetization, as described below. JV partners will fund bank processing fees into Investor Attorney's Escrow Account as per Annex 1.

Whereas Investor will provide JV partners a line of credit Twenty Million Dollars $20,000,000 to be used exclusive to grow the portfolio companies of JV Partner. Both Investor and JV Partner, work together to create growth opportunities for the portfolio companies.

B)      The JV Agreement was the result of numerous trips and expenses on our part to negotiate in person, primarily, with Shiva Prakash and Vikhayat Prakash in Las Vegas, Nevada, over several months before signing.

C)      It is now apparent that you are in breach and completely unable to produce the SBLC despite your endless promises for the last eight months that it was forthcoming. We have seen no evidence of any SWIFT MT799 or MT760 proof of delivery of the SBLC since placing the $336,000.00 into the Escrow Agent Attorney James Chrisman's escrow account. Therefore, under the terms of the Agreement, we reasonably expect that the $336,000.00 must still be in escrow at AMERICAN EXPRESS BANK.

D)      At one point you mentioned you were having problems monetizing the SBLC and subsequently asked us if we would be willing to monetize the SBLC. In that case, the SBLC would have to already have been issued - that was a mystery since, to date, the SBLC has never been supplied to CC TECHNOLOGY CORPORATION.

E)      We are requesting immediate proof that the funds remain in Escrow and have remained in escrow from the deposit date. Failing that we need to see a copy of the MT799 that was the only trigger in the instructions allowing the funds to be accessed. If escrow funds were released to pay for "Banking Services" even though no SBLC has been issued, please provide that documentation.

3.      **RELEASE OF FUNDS**

3.1 Under no circumstances shall INVESTOR seek or accept release of the Deposit of JV PARTNER to INVESTOR until after consummation of the JV Agreement, as evidenced by the acceptance of the requisite documents set forth therein.

3.2 ESCROW shall release the Deposit to INVESTOR as directed:

3.2.1 pursuant to the terms and conditions set forth in the JV Agreement and this Agreement, upon receipt of (a) An MT799 issued from Investor's Bank to Monetizer Bank; (b) A Term Sheet from the Monetization Partner; and (c) An MT799/MT199 Issued from the Monetizer's Bank to the Investor's Bank or

3.2.2 in a subsequent writing signed by both JV Partner, and Investor; or

3.2.3 by a final, non-appealable order or judgment of a court.

2

3.3 If ESCROW is not directed to release the Deposit pursuant to paragraph 3.2 above, and ESCROW receives a request by either INVESTOR or JV PARTNER, to release the Deposit, then ESCROW must give both the JV PARTNER, and INVESTOR prior written notice of not fewer than thirty (30) business days before releasing the Deposit. If ESCROW has not received notice of objection to the release of the Deposit prior to the expiration of said thirty (30) day period, the Deposit shall be released, and ESCROW shall provide further written notice to all parties JV PARTNER, and INVESTOR informing them of said release. If ESCROW receives a written notice from either JV PARTNER or INVESTOR objecting to the release of the Deposit



One attachment • Scanned by Gmail ⓘ

DocuSign Envelope ID: B23CBFE6-2FCE-4749-8F8E-410873698D07

within said thirty (30) day period, ESCROW shall continue to hold the Deposit until otherwise directed pursuant to paragraph 3.2 above. Notwithstanding the foregoing, ESCROW shall have the right at any time to deposit the Deposit contained in the ESCROW Account with the Clerk of the county where the Bank is located and shall give written notice to both INVESTOR, and JV PARTNER, of such deposit.

F)    Over the past two weeks, Vikhayat Prakash and Shiva Prakash have insisted they would deliver the SBLC. However, when I last spoke to Vikhayat Prakash, he was promoting what great real estate deals were currently being closed by Shiva and him for STAVATTI AEROSPACE. Nonetheless, before my call with Vikhayat, I discovered Shiva Prakash had already been notified by STAVATTI of his removal and termination for non-performance.

(G)    It has come to our attention that additional third parties claim to have also experienced a similar history of non-performance despite the promotion and promises made by your company. It brings into question whether your underlying assertion that your "family office" in India had the $50 million financial capacity required to produce the SBLC upon signing our Agreement.

3

H)      Damages

| | |
|---|---|
| Losses to Company (Time Based on Salary): | $4,615.38 |
| Expenses Incurred: | $2,626.89 |
| Initial Escrow Deposit: | $336,000.00 |
| Interest on Funds Borrowed: | $336,000.00 |
| Additional Interest disclosed for late funding in December: | $38,400.00 |
| Funds Borrowed for Other Party (Doctor Group) to close the deal: | ~~$136,000.00~~ |
| *Never Sent per request* | |
| Interest owed on Funds: | $136,000.00 |
| Additional Costs Incurred due to delays (Interest & Late Fees): | $62,375.00 |
| Lost Revenue: (End of July 2023 to date per projections initially provided) | $3,267,085.00 |
| Lost Opportunity/Revenue on Opportunities (Agreements Signed): (From October to date per projections and agreements) | $400,059.80 |
| **Total not including reputational damage incurred:** | **$4,583,162.07** |

I)      CC TECHNOLOGY CORPORATION needs to be compensated for these costs and fees we have lost due to your failure to perform.

J)      We require the escrow funds to be returned forthwith without delay or setoff, especially considering your total lack of performance. You may cause further harm if we are assessed further additional interest, possible penalties, and charges from our Investor. Our Investor has already made a formal demand for an immediate return of the escrow funds plus all outstanding interest.

K)      The lengthy delay of non-performance has substantially harmed our business and reputation while we have incurred additional interest. It appears that CAPITAL PURE ASSETS, LTD may have had us place the $336,000.00 into escrow before the proper underwriting or the underlying commitment of funds was in place to secure the SBLC.

4

Please respond to this letter at your earliest convenience to resolve this matter.

Sincerely,


Thomas Gavin,
Chief Executive Officer / Vice Chairman
CC TECHNOLOGY CORPORATION