**OPP**
**G. MARK ALBRIGHT, ESQ.**
Nevada Bar No.:  001394
**DANIEL R. ORMSBY, ESQ.**
Nevada Bar No.: 014595
**KYLE W. FENTON, ESQ**.
Nevada Bar No.:  016235
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Drive, Suite D4
Las Vegas, Nevada 89106
Telephone: (702) 384-7111
Facsimile: (702) 384-0605
gma@albrightstoddard.com
kfenton@albrightstoddard.com
dormsby@albrightstoddard.com
*Attorneys for Plaintiffs/Counter-defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CAPITAL PURE ASSETS, LTD, a Nevada limited liability company,<br><br>Plaintiff(s),<br><br>vs.<br><br>CC TECHNOLOGY CORPORATION,  a Colorado corporation; DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive,<br>Defendant(s).<br>_____<br>CC TECHNOLOGY CORPORATION, a Colorado corporation,<br>Counterclaimant,<br>vs.<br><br>CAPITAL PURE ASSETS, LTD, a Nevada limited liability company; SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, an individual; VIKHYAT PRAKASH, an individual; JAMES CHRISMAN, P.C. a Nevada professional corporation; JAMES P. CHRISMAN an individual; DOES I through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br>Counter-defendants. | Case No.  2:24-cv-00680-RFB-NJK<br><br>**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO COMPEL DEPOSIT OF THE ESCROW FUNDS WITH THE COURT** |

COMES NOW, Plaintiffs/Counter-defendants, CAPITAL PURE ASSETS, LTD ('Capital Pure'); SHIVA PRAKASH ('Shiva'); HANNAH DAWN PRAKASH ('Hannah'); VIKHYAT PRAKASH ('Vikhyat'); JAMES CHRISMAN, P.C; AND JAMES P. CHRISMAN ('Chrisman')

(collectively known as 'Plaintiffs') by and through their counsel of record, ALBRIGHT, STODDARD, WARNICK & ALBRIGHT, and hereby submit their Opposition to DEFENDAT/COUNTERCLAIMANT CC TECHNOLOGY CORPORATION'S MOTION FOR PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO COMPEL DEPOSIT OF ESCROW FUNDS WITH THE COURT. This Opposition is based on the Memorandum of Points and Authorities below, the papers and pleadings on file with the Court, the exhibits attached, any oral argument that this Court may entertain.

DATED this _16_ day of August, 2024.

ALBRIGHT, STODDARD, WARNICK & ALBRIGHT

G. MARK ALBRIGHT, ESQ.
Nevada Bar No. 001394
DANIEL R. ORMSBY, ESQ.
Nevada Bar No. 014595
KYLE W. FENTON, ESQ.
Nevada Bar No. 016235
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
Tel: (702) 384-7111
Fax: (702) 384-0605
*Attorneys for Plaintiffs/Counter-defendants*

- 2 -

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

CCTC's request for injunctive relief must be denied as CCTC has failed to show both (1) that it will be subjected to irreparable harm; and (2) that it enjoys a reasonable "likelihood of success" on the merits. CCTC must meet *both* of these requirements to be granted injunctive relief, and it meets neither. Here, there is no doubt whatsoever that the entirety of the injunctive relief which CCTC demands in its Motion is premised on one thing: economic damages and money. Because economic damages are not considered irreparable since the injury can later be remedied by a monetary damage award, CCTC fails to meet the irreparable harm burden. CCTC attempts to overcome this burden by purporting that the funds are at the risk of exhaustion and that CPA is purportedly a "sham business", of which CCTC provides no evidentiary support for whatsoever. In fact, the evidentiary record in this case clearly shows that these allegations and purported fears are completely unwarranted. CPA clearly has the funds necessary for a reimbursement, as (1) CPA was able and willing to reimburse the funds to CCTC in March 2024, and (2) is also able and willing to reimburse the funds to CCTC today, provided that the proper release language can be agreed upon. As such, because CCTC's requested relief (1) is entirely premised on monetary damages, and (2) because CCTC fails to show that there is any risk of CCTC being unable to recover their alleged damages should they prevail at trial, CCTC has failed to show a risk of irreparable harm, and injunctive relief is therefore improper.

Moreover, CCTC also fails to show that it has a likelihood of success on the merits, as there are significant disputed facts regarding the claims in both CPA's Complaint, CCTC's Counterclaim, and the subject Motion. CCTC's Motion focuses on the likelihood of success on the merits as it relates to the Escrow Agreement, whereas CPA's Complaint focuses on CCTC's breaches of the Joint Venture Agreement ('JVA'). *However, the JVA and Escrow Agreement function as one document,* and any analysis of CCTC's purported likelihood of success on the merits as it pertains to the Escrow Agreement must take into account the JVA and CPA's claims. Here CPA's ability to follow through with the SBLC and JVA, of which the Escrow Agreement is a part of, was conditioned on CCTC *actually delivering* a quality investment. Here, CCTC breached the JVA, as

CCTC failed to provide a viable funding project such that the issuance of the SBLC could be completed. As a result of this breach, Capital Pure suffered significant damages, including causing CPA to suffer expectation damages of at least $40,000,000.00. Accordingly, there are significant disputed facts as it pertains to the JVA and its accompanying Escrow Agreement, and CCTC has failed to meet its burden of showing a likelihood of success on the merits at this early stage of these pleadings. As such, CCTC's requested injunctive relief must be denied.

## II.   RELEVANT FACTUAL BACKGROUND

Plaintiff/counter-defendant Capital Pure Assets, Ltd. ("CPA") is an investment firm which partners with a variety of different companies to provide capital, project execution, and strategic planning. *See* Declaration of Shiva Prakash, attached hereto as **Exhibit 1** at ¶ 2. Shiva Prakash (hereinafter, "Shiva") is the Chairman of CPA. *See Id.* Defendant/counterclaimant CC Technology Corporation ("CCTC") is a wholly owned subsidiary of Cannatrac Financial Corp. ("Cannatrac"), a company with a focus on payment processing systems in the cannabis industry. *See* CCTC's Counterclaim [ECF No. 5] (hereinafter, "Counterclaim") at ¶ 6.

In May of 2023, CCTC approached CPA to discuss a potential joint venture. The proposal involved bringing investment projects to the joint venture, which CPA would then fund using Standby Letters of Credit (SBLC), with profits to be divided equally between the parties. *See* **Exh. 1** at ¶ 4. However, CPA cannot just agree to any investment project, given the rigorous standards imposed by banks/monetizers in approving of SBLCs. As such, CPA's ability to follow through with any SBLC was conditioned on CCTC *actually delivering a quality investment*. *See* Plaintiffs' Complaint & Jury Demand [ECF No. 1] (hereinafter, "Complaint") at ¶ 11. To that end, CPA provided CCTC with a document titled "Business Submission Criteria for Invent Considerations," which listed important parameters that CPA would evaluate and approve before CPA would consider any proposed project to be viable. *See* **Exh 1** at ¶ 5.

On or about June 1, 2023, CCTC presented CPA with what it promised to be a lucrative real estate project – titled the Timber Development[2] – which involved the purchase of a large building in downtown Chicago that would purportedly be converted into multifamily residences. *See* Complaint at ¶ 15-16. On June 7, 2023, CCTC arranged for a video call to discuss the Timber

---

[2] Curiously, the Timber Development is not mentioned once in CCTC's Motion.

Development, which was attended by Shiva and Vikhyat Prakash ("Vikhyat") of CPA, Thomas Gavin ("Gavin") of CCTC, and realtor Kevin Sievers. *See Id.* at ¶ 18. During such telephonic conference, CCTC assured CPA that (1) the Timber Development was proceeding and the proposed investors were ready to purchase the building; (2) that CCTC had strong relationships with local labor unions in Chicago that would facilitate the development; and (3) that the Timber Development was projected to net a profit of $80,000,000.00. *See Id.* at ¶ 19-21. Relying on CCTC's representations regarding the Timber Development, CPA ultimately entered into a Joint Venture Agreement ("JVA") with CCTC, which was executed on June 26, 2023, and is attached hereto as **Exhibit 2**. Part of the JVA included CCTC placing $336,000.00 into escrow to pay for processing and similar fees associated with the SBLC.

The JVA contains language wherein CCTC represents that "it has various projects and businesses under management" and that it "is confident in its portfolio projects companies." *See* **Exh. 2**. However, while CCTC may have had confidence, such confidence was misguided. CCTC failed to provide any documentation or proof that (1) the Timber Development was ready to proceed; (2) that the project even had the ability to purchase the building in Chicago; and (3) that CCTC actually had the purported labor union relationships that would've facilitated the project. *See* Complaint at ¶ 44. Because CCTC could not provide any documentation or proof that the Timber Development was actually proceeding, CPA could not complete the SBLC process for this project. CCTC proposed an additional project based on the cannabis industry, Cannatrac, but this project also ultimately fell through due to revenue generation concerns and a lack of major bank approval for cannabis-based investments. *See* **Exh. 1** at ¶ 6.

On September 21, 2023, CCTC, frustrated that the SBLC had yet to be issued (as a result of its failure to provide a viable project), expressed its desire to abandon the JVA, and requested a return of the funds it placed in escrow. *See* **Exh. 1** at ¶ 12. On September 29, 2023, Shiva had a call with CCTC and Gavin, wherein it was conveyed that the MT799 Pre-Advice message had already been obtained and that CPA was in the process of obtaining the SBLC. *See Id.* at ¶ 13. Following this discussion, wherein CCTC reiterated that they still desired to go through with the SBLC, CPA proceeded to monetize the loan, ensuring that the funds remained with the bank/monetizer. *See Id.* at ¶ 14.

Unfortunately, though the SBLC process began, it ultimately was never able to be completed, as CCTC failed to provide a viable funding project. CCTC's representations in the JVA that "it has various projects and businesses under management" and that it "is confident in its portfolio projects companies" were categorically untrue: as CCTC only proposed two projects, neither of which were viable: (1) Timber Development, where CCTC was able to provide neither the proof nor documentation necessary to actually follow through; and (2) Cannatrac, which was not viable due to revenue generation concerns and a lack of bank approval due to its connection with a controlled substance. CCTC's breaches and bad faith acts in both its misrepresentations and its failure to provide a viable project as contractually required in the JVA has damaged CPA considerably. However, in a gesture of good faith, in March of 2024, CPA offered to reimburse CCTC the sum of $324,240 (in other words, over 96% of the money that had been in escrow) in a escrow release agreement ("Release.") However, CCTC did not agree to the Release, due to a dispute over language of its terms. *See* Counterclaim at ¶ 55. CPA remains willing and prepared to reimburse funds to CCTC, provided that the two parties can agree on mutual release language. *See* **Exh. 1** at ¶ 16.

### III.   PRELIMINARY INJUNCTION STANDARD

CCTC's 'Legal Standards' section is misguided in its interpretation of the standards and requirements that a moving party must meet in Nevada for a preliminary injunction to be issued. CCTC spends the vast majority of its Motion interpreting the scenarios under which preliminary injunctions *may* be granted under Nevada law, whilst ignoring the *necessary* requirements of a preliminary injunction. In pertinent part, NRS 33.010 states, "NRS 33.010 Cases in which injunction may be granted. An injunction ***may be granted*** in the following cases…" *See* NRS 33.010 (Emphasis added). In other words, while NRS 33.010 lists the scenarios in which a preliminary injunction *may* be granted in Nevada, it does ***not*** provide the test that any party moving for a preliminary injunction must meet in order for such injunctive relief to be granted.

The Supreme Court of Nevada has held that, "[f]or a preliminary injunction to issue, ***the moving party must show*** that there is a likelihood of success on the merits and that the nonmoving party's conduct, should it continue, would cause irreparable harm for which there is no adequate

remedy at law." *Dep't of Conservation & Nat. Res., Div. of Water Res. v. Foley*, 121 Nev. 77, 80, 109 P.3d 760, 762 (2005) (Emphasis added). In other words, in order for a preliminary injunction to be issued, the movant **must** show, "(1) that the party enjoys a reasonable "likelihood of success" on the merits; and (2) the party will be subjected to "irreparable harm." *Pickett v. Comanche Const., Inc.*, 108 Nev. 422, 426, 836 P.2d 42, 44 (1992).

"Injunctive relief is extraordinary relief." *See Dep't of Conversation & Natural Res. v. Foley*, 121 Nev. 77, 80, 109 P.3d 760, 762 (2005). And although the granting of a preliminary injunction is within the discretion of the Court, "the reasons for its issuance must be sufficiently clear." *Clark County Sch. Dist. v. Buchanan*, 112 Nev. 1146, 1150, 924 P.2d 716, 719 (1996).

## IV.    ARGUMENT

### A. CCTC has Not Demonstrated Irreparable Harm and Monetary Damage is Cleary an Adequate Remedy

A plaintiff seeking a preliminary injunction must show that the continuance of a non-movant's conduct, "would cause irreparable harm **for which there is no adequate remedy at law**." *Dep't of Conservation & Nat. Res., Div. of Water Res. v. Foley*, 121 Nev. 77, 80, 109 P.3d 760, 762 (2005) (Emphasis added).

The Ninth Circuit has repeatedly held that economic and monetary damages do not constitute irreparable harm: "We note also that Supreme Court case law and some of our own cases clarify that **economic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award**." *California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009); *See also Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991)("It is true that economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." (emphasis added)); *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 676 (9th Cir.1988*); Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 938 (9th Cir.1987); *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850–51 (9th Cir.1985); *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir.1984) **("Mere financial injury ... will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation**." (Emphasis added).

Here, there is no doubt whatsoever that the entirety of the injunctive relief which CCTC demands in its Motion is premised on economic damages and money. The entire Motion for Preliminary injunction deals with one issue: *money*. Namely, the $336,000 that CCTC placed into escrow to pay for processing and similar fees associated with the SBLC. CCTC even appears to concede this in Motion, writing, "While monetary harm is generally not considered to be irreparable…" *See* Motion at 18:16. Accordingly, because CCTC is only claiming economic injury in this Motion, and because such issue can be remedied via a damages should they be proven at trial, CCTC does not meet the burden of showing irreparable harm, and therefore its entire Motion fails.

In its Motion, CCTC attempts to overcome this insurmountable hurdle of their entirely monetarily centric requested relief by citing to case law by which courts have held that courts *may* issue a preliminary injunction if there is significant risks that the money will later be depleted, either based on the fear that the non-moving party will become insolvent or if the money lies in a fund or trust. *See* Motion at 18:22-28 & 19:1-9. However, CCTC has failed to show that this is a risk in this matter such that extraordinarily injunctive relief may be granted, and the factual record is overwhelmingly in favor of Plaintiffs.

For one, CCTC presents no evidence whatsoever to support its disparaging remarks that CPA is allegedly a "sham organization" or that CPA is not financially healthy, and the Court must reject these arguments of counsel which lack any evidentiary support. Further, and *as CCTC concedes*, in March of 2024, a mere four (4) months ago, CPA offered to reimburse CCTC a sum $324,240 (over 96% of the $336,000) in a Release to reimburse the escrow funds! The Release ultimately fell through because of a dispute over terms in the release, ***not*** because there is a risk that CPA is unable to pay this sum. Moreover, in the Declaration of CPA Chairman Shiva Prakash attached hereto, Shiva testifies that, "*CPA remains willing to reimburse the funds to CCTC, provided that CCTC agrees to CPA's terms in the proposed Release.*" *See* **Exh. 1** at ¶ 16. Accordingly, the Court must ask itself this question: If CPA was able and willing to reimburse the funds to CCTC in March 2024, and is also able and willing to reimburse the funds to CCTC today, *then how can CCTC claim that the funds are at risk of depletion*?

/ / /

Accordingly, CCTC has failed to demonstrate that they are suffering irreparable harm as a result of money feared to be exhausted, a company to be insolvent, or a fear of a breach of trust. CCTC makes further circumstantial arguments, such as stating that CPA is a family-owned business and that other non-named third parties have abused SBLCs in other unrelated matters. However, these circumstantial arguments contain no persuasive authority whatsoever, and are not supported by the record in this case. Clearly, CPA has this money, and is in fact still willing to reimburse CCTC should the Release terms be agreed upon! As such, CCTC has not shown irreparable harm such that extraordinary relief like a preliminary injunction can be issued at this time. Instead, CCTC has the ability to remedy its purely monetary damages via a judgment, as is the standard imposed under Nevada law.

## B. CCTC has not Demonstrated a Likelihood of Success on the Merits for Breach of the Escrow Agreement, Breach of Fiduciary Duties, and Conversion

While CCTC's Motion fails for meeting the necessary requirement of irreparable harm, CCTC also fails to meet its burden to show a likelihood of success on these claims. The movant "has the *burden* of showing a likelihood of success on the merits." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) (*emphasis added*); *see also S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 408, 23 P.3d 243, 246 (2001). When a movant fails to establish a likelihood of success on the merits sufficiently, a motion for preliminary injunction should be denied. *See Bould Oaks Cmty. Ass'n v. B&J Andrews Enterprises, LLC*, 125 Nev. 397, 403 (2009). The Nevada Supreme Court held that a district court commits reversible error if it grants a preliminary injunction despite movant's failure to establish a likelihood of success on the merits. *See id.* "This remedy should only be granted where the merits of the case *clearly favor one party over the other.*" *Gen. Motors Corp. v. Let's Make A Deal*, 223 F. Supp. 2d 1183, 1190 (D. Nev. 2002) (*emphasis added.*) "The cases best suited to preliminary relief are those in which *the important facts are undisputed,* and the parties simply disagree about what the legal consequences are of those facts. The court in such a case can take the undisputed facts, apply the law to them, and fairly easily decide which party is likely to prevail." *Remlinger v. State of Nev.*, 896 F. Supp. 1012, 1015 (D. Nev. 1995) (*emphasis added*).

Here, CCTC is unable to show a likelihood of success on the merits in regard to these claims, as there are significant disputed facts. For one, it is worth noting that CCTC is a Counterclaimant, and that CPA has its own substantial claims against CCTC which relate to the injunctive relief that CCTC requests. The three (3) claims that CCTC alleges that it a likelihood of success on in their Motion (*Breach of the Escrow Agreement, Breach of Fiduciary Duties, and Conversion*) are all related to one thing: the purely economic $336,000 that CCTC placed into escrow for the SBLC, which has been discussed at length *supra*, and of which the Escrow Agreement is attached hereto as **Exhibit 3**. On the other hand, CPA's claims in its Complaint primarily relate to the JVA and CCTC's breaches within such document. *See* Complaint and **Exh. 2**. However, it is important to note that *the Escrow Agreement is a part of the JVA, such that they are intertwined*. This is even documented within the Escrow Agreement itself, wherein it states that the Escrow Agreement is a part of JVA:CPACCTECH50M, which is the reference number of the JVA. *See* **Exhibits 1 and 3**. In other words, the JVA and Escrow Agreement function as one document, and any analysis of CCTC's purported likelihood of success on the merits as it pertains to the Escrow Agreement must take into the JVA and CPA's claims. Because there are significant disputed facts regarding the agreement, CCTC is unable to show a likelihood of success on the three claims.

CPA has significant claims against CCTC as it pertains to the JVA. CPA's ability to follow through with any SBLC was conditioned on CCTC actually delivering a quality investment. *See* Complaint at ¶ 11. To that end, CPA provided CCTC with a document titled "Business Submission Criteria for Invent Considerations," which listed important parameters that CPA would evaluate and approve before CPA would consider any proposed project to be viable. *See* **Exh. 1** at ¶ 5. CPA relied on CCTC's representations that CCTC purportedly had "various projects and businesses under management" and that it "is confident in its portfolio projects companies", representations that later proved to be false. *See* **Exh. 2**. *CPA never presented a viable project such that SBLC could be completed*. CCTC only proposed two projects, neither of which were viable: (1) Timber Development, where CCTC was able to provide neither the proof nor documentation necessary to actually follow through; and (2) Cannatrac, which was not viable due to revenue generation concerns and a lack of bank approval

due to its connection with a controlled substance. As a result of CCTC's breach of never providing a viable project, Capital Pure suffered significant damages, including causing CPA to suffer expectation damages of at least $40,000,000.00 in lost profits as it pertains to CCTC's false representations about the viability of the Timber Development.

Notably, ***the Timber Development is not mentioned once in CCTC's Motion***. Accordingly, there remain significant disputed facts in this matter, not one of which is more important than whether CCTC ever provided a viable project such that the JVA (of which the Escrow Agreement is a part of) could be completed. Any purported claims against Plaintiffs as it pertains to the Escrow Agreement would of course be offset by the damages that CPA suffered as a result of CCTC's breach of the intertwined Escrow Agreement. Moreover, CCTC provides no evidence in its Motion that it ever presented CPA with a viable project. As such, because CCTC has not met its burden of showing a likelihood of success on the merits, and because significant disputed facts are at issue in these early stages of these pleadings, CCTC's requested injunctive relief cannot be granted. Again, "[t]his remedy should only be granted where the merits of the case clearly favor one party over the other." *Gen. Motors Corp. v. Let's Make A Deal*, 223 F. Supp. 2d 1183, 1190 (D. Nev. 2002). Because that is not the case here, CCTC's Motion should be denied in its entirety.

### C. There is No Reason for the Court to Compel Counter-defendants to Deposit the Escrow Funds with the Court

As a last request, CCTC requests that this Court compel Plaintiffs to deposit the $336,000 with the Court because CCTC alleges that it purportedly "is paramount to the ability of CCTC to recover anything in this case." *See* Motion at 23:20-22. Again, such extraordinary relief is not appropriate in this case. Counter-defendants have already clearly demonstrated that they have $336,000 for reimbursement, as demonstrated by (1) the fact that CPA offered to reimburse CCTC the sum of $324,240 in March of 2024; and (2) Shiva's Declaration attached hereto which reiterates that Counter-defendants are willing to reimburse CCTC with the funds if the proper release language is included. *See* **Exh. 1**. Accordingly, the evidentiary record clearly supports that there is no risk that CCTC wouldn't be able to recover the funds should they prevail in this case (or agree to a release for that matter). CPA (1) is an active and healthy business; (2) is in possession of funds

necessary for a reimbursement; and (3) has even offered to make this reimbursement. As such, the circumstances of this case do not warrant this extraordinary measure. CCTC already has a remedy available to it: the ability to be remedied by a damages award. *California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009). Here, CCTC has failed to show that there is any risk of these funds becoming unavailable, and therefore their request should be denied.

## V.    CONCLUSION

For the reasons set forth above, the Court should DENY Counterclaimant's Motion for Preliminary Injunction or, in the Alternative, to Compel Deposit of Escrow Funds with The Court in its entirety.

DATED this $\underline{16}$ day of August, 2024.

ALBRIGHT, STODDARD, WARNICK & ALBRIGHT

G. MARK ALBRIGHT, ESQ.
Nevada Bar No. 001394
DANIEL R. ORMSBY, ESQ.
Nevada Bar No. 014595
KYLE W. FENTON, ESQ.
Nevada Bar No. 016235
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
Tel: (702) 384-7111
Fax: (702) 384-0605
E-Mail: gma@albrightstoddard.com
E-Mail: dormsby@albrightstoddard.com
E-Mail: kfenton@albrightstoddard.com
*Attorneys for Counterdefendants*

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of ALBRIGHT, STODDARD, WARNICK & ALBRIGHT, and that on this __16th__ day of August, 2024, service was made by the Court's ECF system to all of the registered recipients on the electronic service list, of a true and correct copy of the foregoing **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO COMPEL DEPOSIT OF THE ESCROW FUNDS WITH THE COURT:**

SKLAR WILLIAMS PLLC
STEPHEN R. HACKETT, ESQ.
DAVID B. BARNEY, ESQ.
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
shackett@sklar-law.com
dbarney@sklar-law.com
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

Certified Mail
X    Electronic Filing/Service
Email
Facsimile
Hand Delivery
Regular Mail

//s// **Phyllis P. Cameron**
An employee of Albright, Stoddard, Warnick & Albright

- 13 -