**RESP**
**G. MARK ALBRIGHT, ESQ.**
Nevada Bar No.: 001394
**DANIEL R. ORMSBY, ESQ.**
Nevada Bar No.: 014595
**KYLE W. FENTON, ESQ.**
Nevada Bar No.: 016235
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Drive, Suite D4
Las Vegas, Nevada 89106
Telephone: (702) 384-7111
Facsimile: (702) 384-0605
gma@albrightstoddard.com
kfenton@albrightstoddard.com
dormsby@albrightstoddard.com
*Attorneys for Plaintiffs/Counter-defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CAPITAL PURE ASSETS, LTD, a Nevada limited liability company,<br><br>Plaintiff(s),<br><br>vs.<br><br>CC TECHNOLOGY CORPORATION, a Colorado corporation; DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive,<br>Defendant(s). | Case No. 2:24-cv-00680-RFB-NJK<br><br><br>**PLAINTIFF/COUNTERDEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE** |
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br>Counterclaimant,<br>vs.<br><br>CAPITAL PURE ASSETS, LTD, a Nevada limited liability company; SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, an individual; VIKHYAT PRAKASH, an individual; JAMES CHRISMAN, P.C. a Nevada professional corporation; JAMES P. CHRISMAN an individual; DOES I through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br>Counter-defendants. | |

COMES NOW, Plaintiff/Counter-defendants, CAPITAL PURE ASSETS, LTD ('Capital Pure'); SHIVA PRAKASH ('Shiva'); HANNAH DAWN PRAKASH ('Hannah'); VIKHYAT PRAKASH ('Vikhyat'); JAMES CHRISMAN, P.C; AND JAMES P. CHRISMAN ('Chrisman') by and through their counsel of record, ALBRIGHT, STODDARD, WARNICK & ALBRIGHT,

and hereby files their Response this Court's Order to Show Cause as to why this Court should not abstain in this case due to issues concerning marijuana and its illegal status under federal law. This Response is based on the Memorandum of Points and Authorities below, the papers and pleadings on file with the Court, the exhibits attached, and any oral argument that this Court may entertain.

DATED this _____ day of September, 2024.

ALBRIGHT, STODDARD, WARNICK & ALBRIGHT


_____

G. MARK ALBRIGHT, ESQ.
Nevada Bar No. 001394
DANIEL R. ORMSBY, ESQ.
Nevada Bar No. 014595
KYLE W. FENTON, ESQ.
Nevada Bar No. 016235
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
Tel: (702) 384-7111
Fax: (702) 384-0605
*Attorneys for Plaintiffs/Counter-defendants*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Court should abstain in part from these proceedings, by both abstaining from hearing CCTC's Counterclaim, and by allowing CPA's Complaint to continue in this Court. CCTC alleges that it entered into a joint venture agreement to develop and market CannaCard, which is a cashless payment and reward system to be used in the cannabis retail industry. As such, CannaCard clearly aids and abets in the sale of marijuana by encouraging consumers to buy cannabis products, an activity which remains illegal under federal law. Accordingly, this Court must abstain from hearing CCTC's Counterclaim, as doing so would require the Court to make determinations involving marijuana sales and related activities that are in violation of federal law. The recent exception to such abstention that the Ninth Circuit held in *Peridot Tree* is inapplicable to CCTC's claims in its Counterclaim, which do not involve any significant constitutional concerns such as the dormant-commerce clause or the constitutionality of a local governmental ordinance.

- 2 -

On the contrary, CPA's claims in the Complaint relate entirely to the Timber Development – which was to be a large real estate project in downtown Chicago, and which is devoid of any connection to marijuana whatsoever. CPA denies entering into any joint venture agreement ("JVA") involving marijuana, and the JVA that the parties entered into is devoid of any language concerning the business or sale of cannabis. Accordingly, because CPA has proper jurisdiction in this matter and its allegations involve neither the sale of marijuana nor the aiding and abetting of the sale of marijuana, this Court should not abstain from hearing CPA's claims, and instead only abstain from CCTC's Counterclaim relating to cannabis sales.

## II.    RELEVANT FACTUAL BACKGROUND

**CPA's Complaint**

Plaintiff/counter-defendant Capital Pure Assets, Ltd. ("CPA") is an investment firm which partners with a variety of different companies to provide capital, project execution, and strategic planning. *See* Declaration of Shiva Prakash, attached hereto as **Exhibit 1** at ¶ 2. In May of 2023, CC Technology Corporation ("CCTC") approached CPA to discuss a potential joint venture. The proposal involved bringing investment projects to the joint venture, which CPA would then fund using Standby Letters of Credit (SBLC), with profits to be divided equally between the parties. *See* **Exh. 1** at ¶ 4. However, CPA cannot just agree to any investment project, given the rigorous standards imposed by banks/monetizers in approving of these SBLCs. As such, CPA's ability to follow through with any SBLC was conditioned on CCTC *actually delivering a quality investment*. *See* Plaintiffs' Complaint & Jury Demand [ECF No. 1] (hereinafter, "Complaint") at ¶ 11. To that end, CPA provided CCTC with a document titled "Business Submission Criteria for Invest Considerations," which listed important parameters that CPA would evaluate and approve before CPA would consider any proposed project to be viable. *See* **Exh 1** at ¶ 5.

On or about June 1, 2023, CCTC presented CPA with what it promised to be a lucrative real estate project – titled the Timber Development – which involved the purchase of a large building in downtown Chicago that would purportedly be converted into multifamily residences. *See* Complaint at ¶ 15-16. On June 7, 2023, CCTC arranged for a video call to discuss the Timber Development, which was attended by Shiva and Vikhyat Prakash ("Vikhyat") of CPA, Thomas Gavin ("Gavin") of CCTC, and realtor Kevin Sievers. *See* Id. at ¶ 18. During such telephonic conference, CCTC

assured CPA that (1) the Timber Development was proceeding and the proposed investors were ready to purchase the building; (2) that CCTC had strong relationships with local labor unions in Chicago that would facilitate the development; and (3) that the Timber Development was projected to net a profit of $80,000,000.00. *See* Id. at ¶ 19-21. Relying on CCTC's representations regarding the Timber Development, CPA ultimately entered into a Joint Venture Agreement ("JVA") with CCTC, which was executed on June 26, 2023, and is attached hereto as **Exhibit 2**. Part of the JVA included CCTC placing $336,000.00 into escrow to pay for processing and similar fees associated with the SBLC. Notably to this Response, *the JVA does not specify that any projects contemplated under the agreement would be associated with marijuana, and neither the word 'CannaCard', nor any other reference to marijuana, are located within the JVA.* See **Exhibit 2**.

The JVA contains language wherein CCTC represents that "it has various projects and businesses under management" and that it "is confident in its portfolio projects companies." *See* **Exh. 2**. However, while CCTC may have had confidence, such confidence was misguided. CCTC failed to provide any documentation or proof that (1) the Timber Development was ready to proceed; (2) that the project even had the ability to purchase the building in Chicago; and (3) that CCTC actually had the purported labor union relationships that would have facilitated the project. *See* Complaint at ¶ 44. Because CCTC could not provide any documentation or proof that the Timber Development was actually proceeding, CPA could not complete the SBLC process for this project. CCTC proposed an alternative project based on the cannabis industry, Cannatrac, but this project also ultimately fell through due to revenue generation concerns and a lack of major bank approval for cannabis-based investments. *See* **Exh. 1** at ¶ 6.

Unfortunately, though the SBLC process began, it ultimately was never able to be completed, as CCTC failed to provide a viable funding project. CCTC's representations in the JVA that "it has various projects and businesses under management" and that it "is confident in its portfolio projects companies" were categorically untrue: as CCTC only proposed two projects, neither of which were viable: (1) Timber Development, where CCTC was able to provide neither the proof nor documentation necessary to actually follow through; and (2) Cannatrac, which was not viable due to revenue generation concerns and a lack of bank approval due to its connection with a controlled substance. CCTC's breaches and bad acts in both its misrepresentations and its failure

to provide a viable project as contractually required in the JVA has damaged CPA considerably. In fact, CCTC's false representations about the viability of the Timber Development caused CPA to suffer expectation damages of at least $40,000,000.00 in lost profits.

**CCTC's Counterclaim**

While Plaintiff's Complaint focuses on the Timber Development, a proposed Chicago real estate project entirely unrelated to the marijuana industry, CCTC's Counterclaim instead focuses on CannaCard. CCTC alleges that CannaCard is a "cashless payment and reward system that could be used in the cannabis industry." *See* CCTC's Counterclaim [ECF No. 5] (hereinafter, "Counterclaim") at ¶ 17. CCTC does not mention the Timber Development once throughout its entire counterclaim, and instead alleges that, "[t]he JVA centered around CCTC's development and management of the CannaCard brand." (despite CannaCard being entirely absent from the JVA itself). *See* Counterclaim at ¶ 24.

CCTC alleges that it was in fact CPA who breached the JVA, alleging that the JVA was centered around CannaCard/Cannatrac, and that CPA failed to secure the SBLC necessary to fund this purported marijuana project. CCTC also alleges a host of claims against Counterdefendants as it pertains to a $336,000 payment that CCTC placed into escrow to pay for processing and similar fees associated with the SBLC, which is discussed at length in CCTC's Motion for Preliminary Injunction and its associated opposition and reply. *See* [ECF Nos. 23, 26, & 29.] Notably, the Escrow Agreement and the $336,000 are a part of the JVA – which, again, CCTC alleges is entirely centered around CannaCard.

**III.    ARGUMENT**

Federal courts have abstained from adjudicating state law claims that arise from activities considered illegal under federal law, such as the cultivation or sale of marijuana. *See U.S. v. Washington*, 887 F.Supp.2d 1077 (2012); *U.S. v. Stacy*, 734 F.Supp.2d 1074 (2010). This abstention is based on the rationale that federal courts should not be compelled to enforce or engage in activities that contravene federal law. Here, where CPA's Complaint involves a real estate transaction devoid of any connection with marijuana, and where CCTC's Counterclaim alleges a purported transaction involving a cannabis-focused cashless payment system that aides and abets in the sale of marijuana,

this Court should both allow CPA's Complaint to proceed in federal court, and abstain from hearing CCTC's Counterclaim.

### A. CCTC's Counterclaim Should be Dismissed Because it Involves a Purported Transaction that Aids and Abets in the Sale of Marijuana

The sale of marijuana continues to be a criminal offense pursuant to federal law, as is the aiding and abetting of the sale of marijuana. See, e.g., 21 U.S.C. § 801, et seq.; 18 U.S.C. § 2. When determining whether to assert jurisdiction over a case involving a contractual dispute where the contract involves marijuana, courts have generally examined whether asserting jurisdiction over the dispute would result in a violation of federal law. *Indian Hills Holdings, LLC v. Frye*, No. 320CV00461BENAHG, 2021 WL 5994036, at *9 (S.D. Cal. Dec. 17, 2021). In *Gopal*, the Court noted that, "State courts have a greater interest in the interpretation of state laws that create regulatory channels for cannabis cultivation, licensing, sales, and distribution, especially when those laws conflict with the CSA." *Gopal v. Luther*, No. 2:21-CV-00735-KJM-CKD, 2022 WL 504983, at *4 (E.D. Cal. Feb. 18, 2022) *See also MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n,* 487 F. Supp. 3d 364, 376 (D. Md. 2020).

Here, CCTC seeks to enforce a contract, the JVA, that it alleges was "centered around CCTC's development and management of the CannaCard brand." *See* Counterclaim at ¶ 24. CCTC describes CannaCard as a "cashless payment and reward system that could be used in the cannabis industry." *See* Counterclaim at ¶ 17. Accordingly, the intended use of CannaCard, which is to provide cashless rewards and benefits to individuals seeking to purchase marijuana, aids and abets in the sale of marijuana, and is therefore illegal under federal law. See, e.g., 21 U.S.C. § 801, et seq.; 18 U.S.C. § 2. The entire premise of CannaCard is designed to entice individuals to continue to purchase marijuana so that they may accumulate benefits and rewards that offer them discounts on future purchases. Such a system is obviously in violation of the Controlled Substances Act, wherein marijuana remains a Schedule I substance. *See* 21 U.S.C. § 812(b)(1). Accordingly, asserting jurisdiction over CCTC's Counterclaim would require this Court to make determinations involving activities that are in violation of federal law. *Indian Hills Holdings, LLC v. Frye*, No. 320CV00461BENAHG, 2021 WL 5994036, at *9 (S.D. Cal. Dec. 17, 2021).

- 6 -

Further, it's worth noting that while CCTC may attempt to argue that its claims are allegedly more concerned with the $336,000.00 escrow that it is allegedly owed under the Escrow Agreement, as opposed to claims relating to the JVA and CannaCard, such an argument is without merit. It's important to note that *Escrow Agreement, where the $336,000 stems from, is a part of the JVA, such that they are intertwined*. This is even documented within the Escrow Agreement itself, wherein it states that the Escrow Agreement is a part of "JVA:CPACCTECH50M", which is the reference number of the JVA. *See* **Ex. 1**, and *See* Escrow Agreement, hereto as **Exhibit 3**. In other words, the JVA and Escrow Agreement function as one document, and any potential claims or remedies CCTC seeks under the Escrow Agreement requires this Court to evaluate the JVA. Because CCTC alleges that the entire function of the JVA was to facilitate the aiding and abetting of marijuana sales through CannaCard, this would require this Court to adjudicate state law claims arising from the cultivation or sale of marijuana, which federal courts have deemed improper due to such activities being illegal under federal law. See *U.S. v. Washington*, 887 F.Supp.2d 1077 (2012); *U.S. v. Stacy*, 734 F.Supp.2d 1074 (2010).

Retaining jurisdiction over cases involving the marijuana industry, particularly when dealing with financial questions involving national banks and loans to those in the marijuana industry, as CCTC alleges, would risk the Court implicitly endorsing conduct that violates federal law, creating significant legal and constitutional concerns. In sum, should CCTC argue that the majority of its claims relate to the $336,000 held in escrow as opposed to marijuana activities, such argument fails because the Escrow Agreement *is a part of the JVA* - which CCTC's Counterclaim states was to aid and abet in the purchase and sale of marijuana through the CannaCard payment software.

In its Order to Show Cause, the Court notes that the Ninth Circuit recently held that abstention was not warranted with regard to adjudicating federal constitutional claims concerning a governmental ordinance as to a residency requirement for storefront cannabis dispensaries. *See Peridot Tree, Inc. v. City of Sacramento,* 94 F.4th 916, 921 (9th Cir. 2024). In *Peridot Tree*, the plaintiff argued that Sacramento's requirement that individuals applying for permits to operate marijuana dispensaries was in violation of the federal Constitution's dormant Commerce Clause, because it discriminates between residents and non-residents. *See* Id. The Court noted that the case, "presents 'pronounced' federal interests, implicating the 'substantial federal concern' of whether

- 7 -

the dormant Commerce Clause applies to conduct lawful under state law and unlawful under federal law," and ultimately held that abstention was unwarranted. *See Peridot Tree, Inc. v. City of Sacramento*, 94 F.4th 916, 931 (9th Cir. 2024). The Court held that the important interests regarding the dormant commerce clause compelled the district court to hear the case, even though, it will "require venturing into the murky forests of state and federal recreational-marijuana law." *See* Id. at 936.

The recent opinion provided by the Ninth Circuit in *Peridot Tree* is inapplicable to CCTC's Counterclaim, and its ruling can be easily distinguished from the facts at hand. While *Peridot Tree* focuses on the necessity of the federal district court to evaluate the dormant-commerce clause and to review the constitutionality of a governmental ordinance, here there are no such important constitutional concerns. CCTC does not allege that any governmental ordinances are relevant to its marijuana-focused Counterclaim, and further does not assert any claims that could be construed as involving the dormant commerce clause. CCTC does not allege any facts relevant to concerns such as race, religion, residency, or national origin. Moreover, CCTC does not allege any facts related to important constitutional issues such as freedom of speech, equal protection, and due process. Accordingly, because CCTC's counterclaim neither involves constitutional issues such as the dormant-commerce clause and the constitutionality of a governmental ordinance, nor any other important constitutional concerns, the exception provided in *Peridot Tree* does not apply, and this Court should abstain from hearing CCTC's Counterclaim.

**B. The Court Should not Abstain from Hearing CPA's Complaint, as CPA has Valid Diversity Jurisdiction and does not Allege a Contract Involving Marijuana**

This Court should refrain from abstaining as to CPA's Complaint, because CPA alleges that it did not venture into any cannabis business with CCTC and because the sale of marijuana is not at issue in CPA's Complaint. As discussed in Section II of this Response, CPA declined to form a joint venture with CCTC in relation to CCTC's proposed cannabis project because (1) such project was

///

///

///

not viable due to revenue generation concerns, and because (2) there was a lack of bank approval due to the project's connection with a controlled substance[2]. Notably, the JVA itself is devoid of any language referencing Cannatrac or CannaCard, further supporting CPA's allegations that it never entered into a contract with CCTC relating to the business of marijuana. The only reference to Cannatrac or cannabis in CPA's Complaint is to merely state that CCTC *proposed* these projects, but that CPA declined to pursue them. *See* Complaint at ¶¶ 12-14.

The gravamen of CPA's Complaint relates to the Timber Development, and CCTC's material misrepresentations thereto, which is a Chicago real estate project devoid of any connection to marijuana. The agreement that CPA entered into with CCTC for the Timber Development involved the purchase of a large historic building in downtown Chicago that was to be converted into multifamily residences. CPA only entered into this agreement based on CCTC's representations that (1) the Timber Development was proceeding and the proposed investors were ready to purchase the building; (2) that CCTC had strong relationships with local labor unions in Chicago that would facilitate the development; and (3) that the Timber Development was projected to net a profit of $80,000,000.00. Such representations proved to be false, and CCTC incurred significant damages as a result of the Timber Development through due to CCTC's conduct.

Accordingly, while CCTC's Counterclaim focuses on CannaCard and the facilitation of marijuana purchases, CPA's Complaint focuses on a real estate project which is entirely devoid of any reference to marijuana. As such, the analysis provided in Section A regarding the difficulty of this Court to hear CCTC's claims under a contract involving the aiding and abetting of marijuana sales is not relevant to CPA's Complaint, which focuses on a real estate transaction. Notably, CPA has proper subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between CPA and CCTC and because the amount in controversy exceeds $75,000, exclusive of interest and costs. A complaint need not be dismissed simply because a court must abstain from hearing a subsequently filed counterclaim due to issues involving illegal conduct. Accordingly, because CPA has proper jurisdiction and its allegations involve neither the

---

[2] Federal regulations, such as the Bank Secrecy Act (BSA) and Anti-Money Laundering (AML) laws, require banks to report suspicious activity and avoid transactions related to illegal activities, which includes cannabis under federal law. Banks fear that providing services to cannabis businesses could expose them to federal penalties or accusations of money laundering. As a result, many cannabis businesses face difficulties accessing traditional banking services, leading them to operate largely in cash or seek alternative financial services.

sale of marijuana nor the aiding and abetting of the sale of marijuana, this Court should not abstain from hearing CPA's claims as stated in the Complaint.

## IV.    CONCLUSION

For the reasons set forth above, the Court should abstain in part from these proceedings, by abstaining from CCTC's Counterclaim due to its claims regarding the aiding and abetting of the sale of marijuana, which is a criminal offense pursuant to federal law. However, the Court should not abstain from hearing CPA's Complaint, because CPA has proper jurisdiction and its allegations involve neither the sale of marijuana nor the aiding and abetting of the sale of marijuana

DATED this 4th day of September, 2024.

ALBRIGHT, STODDARD, WARNICK & ALBRIGHT



G. MARK ALBRIGHT, ESQ.
Nevada Bar No. 001394
DANIEL R. ORMSBY, ESQ.
Nevada Bar No. 014595
KYLE W. FENTON, ESQ.
Nevada Bar No. 016235
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
Tel: (702) 384-7111
Fax: (702) 384-0605
E-Mail: gma@albrightstoddard.com
E-Mail: dormsby@albrightstoddard.com
E-Mail: kfenton@albrightstoddard.com
*Attorneys for Counterdefendants*

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of ALBRIGHT, STODDARD, WARNICK & ALBRIGHT, and that on this __4th__ day of September, 2024, service was made by the Court's ECF system to all of the registered recipients on the electronic service list, of a true and correct copy of the foregoing **PLAINTIFF/COUNTERDEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE** as follows:

SKLAR WILLIAMS PLLC                                                           Certified Mail
STEPHEN R. HACKETT, ESQ.                              X      Electronic Filing/Service
DAVID B. BARNEY, ESQ.                                               Email
410 South Rampart Boulevard, Suite 350                  Facsimile
Las Vegas, Nevada 89145                                            Hand Delivery
shackett@sklar-law.com                                             Regular Mail
dbarney@sklar-law.com
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*


//s// **Phyllis C. Cameron**
An employee of Albright, Stoddard, Warnick & Albright

- 11 -