**G. MARK ALBRIGHT, ESQ.**
Nevada Bar No.: 001394
**DANIEL R. ORMSBY, ESQ.**
Nevada Bar No.: 014595
**KYLE W. FENTON, ESQ**.
Nevada Bar No.: 016235
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Drive, Suite D4
Las Vegas, Nevada 89106
Telephone: (702) 384-7111
Facsimile: (702) 384-0605
gma@albrightstoddard.com
kfenton@albrightstoddard.com
dormsby@albrightstoddard.com
*Attorneys for Plaintiff/Counter-defendants,*
Capital Pure Assets, LTD.; Shiva Prakash;
Hannah Dawn Prakash; Vikhyat Prakash;
James Chrisman, P.C.; James P. Chrisman

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CAPITAL PURE ASSETS, LTD, a Nevada limited liability company, | Case No.  2:24-cv-00680-NJK |
| Plaintiff(s), | |
| vs. | |
| CC TECHNOLOGY CORPORATION, a Colorado corporation; DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive, | **JOINT STATUS REPORT** |
| Defendant(s). | |
| CC TECHNOLOGY CORPORATION, a Colorado corporation, | |
| Counterclaimant, | |
| vs. | |
| CAPITAL PURE ASSETS, LTD, a Nevada limited liability company; SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, an individual; VIKHYAT PRAKASH, an individual; JAMES CHRISMAN, P.C. a Nevada professional corporation; JAMES P. CHRISMAN an individual; DOES I through 10, inclusive; and ROE ENTITIES I through X, inclusive, | |
| Counter-defendants. | |

Pursuant to the Court's Order dated September 12, 2024 (ECF No. 36), Plaintiff/Counter-defendants, CAPITAL PURE ASSETS, LTD ('Capital Pure'); and SHIVA PRAKASH ('Shiva');

HANNAH DAWN PRAKASH ('Hannah'); VIKHYAT PRAKASH ('Vikhyat'); JAMES CHRISMAN, P.C; and JAMES P. CHRISMAN ('Chrisman') (collectively known as "Plaintiff/Counter-defendants"), by and through their counsel of record, G. Mark Albright, Esq., and Kyle W. Fenton, Esq., of ALBRIGHT, STODDARD, WARNICK & ALBRIGHT, and Defendant/Counterclaimant CC TECHNOLOGY CORPORATION ("CCTC"), by and through its counsel of record Stephen R. Hackett, Esq. and David B. Barney, Esq., of the law firm SKLAR WILLIAMS PLLC, hereby submit this Joint Status Report.

## 1. Action Required by this Court:

On September 12, 2024, this Court issued an Order requiring counsel for the parties to confer on whether a stipulation to deposit funds with the Court is warranted, and to then subsequently file a joint status report regarding such issue by September 18, 2024. ECF No. 36. On September 17, 2024, Kyle W. Fenton, Esq. on behalf of Plaintiff/Counter-defendants, and David. B. Barney, Esq., on behalf of CCTC, met and conferred via telephonic conference regarding the issue. An agreement was not able to be reached, as Plaintiff/Counter-defendants maintain that depositing the funds is not warranted under the facts of this case. A brief summary of the parties' respective positions is set forth below.

### A. Plaintiff/Counter-defendant's Position

Plaintiff/Counter-defendants maintain that depositing the escrow funds with the Court is not warranted in this matter, for several reasons. As an initial matter, in the Declaration of Shiva Prakash, attached as Exhibit 1 to *Plaintiff-Counter-defendant's Opposition to Motion for Preliminary Injunction or, in the Alternative, to Compel Deposit of the Escrow Funds with the Court*, the following statement is made: "CPA remains willing to reimburse the funds to CCTC, provided that CCTC agrees to CPA's terms in the proposed Release." [ECF No. 26] (Emphasis added). In other words, CPA's willingness to reimburse the funds to CCTC is *not* a concession that the escrow funds are owed to CCTC, nor is it a concession that the likelihood of merits finds in CCTC's favor. Rather, it is CPA's acknowledgment that it is willing to settle this matter and reach a release as to all parties should CPA agree to accept the reimbursement. This is readily

distinguishable from the case cited to in the Court's Order, *in re Villa Marina Yacht Harbor*, Inc., 984 F.2d 546, 548-49 (1st Cir. 1993), wherein defendant stated, "it is admitted that VILLA MARINA owes CHASE the principal sum and interest therein pleaded." In other words, unlike the defendant in *Villa Marina* who conceded that it owed the money, CPA maintains that CCTC has not established a likelihood of success on the merits, and CPA is simply willing to reimburse the funds to CCTC in order to settle the matter and reduce the cost of litigation. In the event that a settlement cannot be reached, CPA maintains the validity of both its claims and its defenses to CCTC's counterclaims.

*Villa Marina* can also be distinguished by the fact the defendant in that matter was in receivership, and therefore there was a significant risk that the funds may be depleted, or given to other creditors, prior to the awarding of any judgment. Here, CPA maintains that this is not the case. CPA is a healthy company that has not filed for bankruptcy, is not in receivership, and is still actively maintaining business. Accordingly, there is no risk here that CPA "has no assets or any funds that could satisfy a final judgment in this case," as CCTC claims in its Motion to Compel. [ECF No. 22] at 24:7-8. Accordingly, because there is no risk of fund depletion in this matter in the event CCTC should be awarded a judgment, an extraordinary measure such as compelling funds to be sent to the Court is not warranted.

Lastly, it should be noted that the request that the request that CPA "deposit the escrow funds with the Clerk's Office," is a request that quite simply cannot be accomplished due to the facts of this case. As stated in the Declaration of Shiva Prakash, the funds no longer remain in escrow. *See* [ECF No. 26] at Exhibit 1 at ¶ 14. CPA proceeded to monetize the loan after receiving consent from Thomas Gavin of CCTC stating that he wished to go through with the SBLC following the obtainment of the MT799 Pre-Advice message. *See* [ECF No. 26] at Exhibit 1 at ¶ 13. Accordingly, any money that CPA would give CCTC in regard to a settlement, or in the event of a judgment, would be a *reimbursement* out of pocket, as opposed to a return of the escrow funds.

Moreover, Plaintiff/counter-defendants object to the Court taking into consideration ECF Nos. 22-12, 22-15, and 22-16 in rendering its decision on this matter. FRE Rule 408 states that

Evidence of Compromise Offers and Negotiations, "is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." The foregoing exhibits clearly contain confidential settlement communications and documents between CPA's prior counsel and CCTC, and CCTC is attempting to improperly use such communications both to prove their claims and to impeach CPA, in clear violation of FRE Rule 408. In the event that CCTC continues to rely on these documents, Plaintiffs/counter-defendants will file a Motion to Strike accordingly. Furthermore, CPA's counsel does not know CPA's prior counsel understanding as to the status of the escrow funds prior to the undersigned's retention. However, it is the undersigned's understanding that a reimbursement of the funds has been offered several times to CCTC on conditions of a mutual release, which have been rejected as of the date of this report. Thus, the undersigned's understanding and all its representations to this Court, have been that the funds were transferred to the monetizer, and that CPA is willing to reimburse the funds as part of a resolution to this case.

Lastly, counsel for Plaintiff/counter-defendants objects to any implication in CCTC's response that information regarding the status of the funds was intentionally omitted during the meet-and-confer, as this fact was already extensively briefed, and acknowledged by CCTC, in its Reply in Support of Preliminary Injunction. See [ECF No. 29] at P. 2:10-13, wherein CCTC acknowledges that it understands the escrow funds are no longer being held.

**B. <u>CCTC's Position</u>**

During the meet-and-confer held on September 17, 2024, CCTC's counsel advised of its understanding that the purpose of the conference was to see if the parties can resolve the issue of a deposit of the escrow funds with the Court, to potentially avoid court intervention regarding the matter. Plaintiff/Counter-defendants' counsel stated that his clients maintain the positions set forth in their oppositions to the pending motions, and that they will therefore not consent to any deposit of funds. CCTC's counsel reiterated his belief that the Court was trying to encourage a mutually acceptable resolution regarding the deposit, and Plaintiff/Counter-defendants' counsel advised that he understood, but at this time, his clients maintained their position. The conference ended with no

agreement regarding the deposit, and at no time during the conference did Plaintiff/Counter-defendant's counsel advise—as set forth above—that his clients do not have possession of the subject funds.

To briefly address the comments above, the Court should be even more alarmed about the admission that the escrow funds are no longer under the control of the escrow agent or Plaintiff/Counter-defendants.  On the one hand, Plaintiff/Counter-defendants—as well as their prior counsel—promised to return the funds to CCTC as recently as April 8, 2024.  *See* ECF No. 22-12, at Page 4 of 6 (proposed "Mutual Release for Escrow"); ECF No. 22-15, at Page 2 of 3 ("Capital Pure Assets will instruct the Escrow that it does not object to the release of the escrow funds and that they should be returned to the source account from which they were sent.").  On the other hand, they now state that the funds were transferred to the "monetizer bank," notwithstanding that (i) the funds were not to be released unless and until the Standby Letter of Credit ("SBLC") was issued, *see* ECF No. 22-2, at Page 3 of 15 (providing that the escrow funds would be released upon the issuance of the MT760, i.e., the Standby Letter of Credit, which was never issued in this case); and (ii) Capital Pure's **own Complaint** takes the position that the SBLC could not be issued because CCTC did not provide proof to the bank of any viable projects.  *See* Capital Pure's Complaint (ECF No. 1, ¶¶ 43-44).  And the entire time, the escrow agent—an attorney with fiduciary obligations to CCTC—has remained completely silent about where the escrow funds are, whether they have in fact been released from escrow, and why depositing the contested escrow funds with the Court is not appropriate.

Unfortunately, it is now clear that the escrow funds were improperly released to Capital Pure, apparently in contravention of the parties' agreements and contrary to the claims asserted in Capital Pure's own Complaint.  Capital Pure now claims to no longer have the funds because they were allegedly transferred to the "monetizer bank," even though the SBLC was never issued.  These constantly shifting stories once again confirm why the Court should order the deposit of the contested escrow funds, as such an "order is a paradigm case of preserving the *status quo* with no harm to either party pending a hearing on the merits." *In re Villa Marina Yacht Harbor, Inc.*, 984

Albright Stoddard
Warnick & Albright

F.2d 546, 549 (1st Cir. 1993).

With regard to Plaintiff/Counter-defendants' reference to FRE 408, the Court did not require the parties to meet and confer so they can re-litigate this matter in additional briefing. For the avoidance of doubt, that argument was waived, as it was not included in Plaintiff/Counter-defendants' opposition to CCTC's motions. *See generally* ECF No. 26. Finally, regarding Plaintiff/Counter-defendants' claim that CCTC had previously acknowledged the funds were no longer in the possession of Plaintiff/Counter-defendants, that is simply not true. On page 2, lines 10-13 of CCTC's reply brief in support of the instant motions, ECF No. 29, CCTC points out that Chrisman—the escrow agent tasked with maintaining sole possession of the escrow funds—no longer had possession, and that it appeared the other Counter-defendants had now improperly come into possession of the funds.

This Joint Status Report is submitted pursuant to the Court's Order dated September 12, 2024 (ECF No. 36). Each signature hereto constitutes that to the best of the signer's knowledge, information and belief, formed upon a reasonable inquiry, the disclosures made by the signers are complete and correct as of this time.

DATED this 18th day of September, 2024.

DATED this 18th day of September, 2024.

**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**

**SKLAR WILLIAMS PLLC**

**//s// Kyle W. Fenton**
**G. MARK ALBRIGHT, ESQ.**
**KYLE W. FENTON, ESQ.**
**DANIEL R. ORMSBY, ESQ.**
801 South Rancho Drive, Suite D4
Las Vegas, Nevada 89106
Telephone: (702) 384-7111
Facsimile: (702) 384-0605
gma@albrightstoddard.com
kfenton@albrightstoddard.com
dormsby@albrightstoddard.com
*Attorneys for Plaintiff/Counter-defendants,*
*Capital Pure Assets, LTD.; Shiva Prakash;*
*Hannah Dawn Prakash; Vikhyat Prakash;*
*James Chrisman, P.C.; James P. Chrisman*

**//s// David B. Barney**
**STEPHEN R. HACKET, ESQ.**
**DAVID B. BARNEY, ESQ.**
410 South Rampart Blvd., Ste. 350
Las Vegas, NV 89145
Telephone: (702) 360-6000
Facsimile: (702) 360-0000
shackett@sklar-law.com
dbarney@sklar-law.com
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*