Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile:  (702) 360-0000
Email: shackett@sklar-law.com
        dbarney@sklar-law.com
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CAPITAL PURE ASSETS, LTD, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CC TECHNOLOGY CORPORATION, a Colorado corporation; DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-00680-NJK<br><br><br>**DEFENDANT/COUNTERCLAIMANT CC TECHNOLOGY CORPORATION'S REPLY IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS AGAINST COUNTER-DEFENDANTS** |
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br><br>Counterclaimant,<br><br>v.<br><br>CAPITAL PURE ASSETS, LTD, a Nevada limited liability company; SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, an individual; VIKHYAT PRAKASH, an individual; JAMES CHRISMAN, P.C., a Nevada professional corporation; JAMES P. CHRISMAN, an individual; DOES 1 through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br><br>Counter-defendants. | |

1

Defendant/Counterclaimant CC Technology Corporation ("CCTC"), by and through its attorneys, the law firm of Sklar Williams PLLC, hereby files this Reply ("Reply") in support of its Motion to Enforce Settlement and for Sanctions against Counter-defendants (ECF No. 57; the "Motion").

This Reply is made and based upon the following Memorandum of Points and Authorities, the exhibits attached hereto, all of the papers and pleadings on file herein, and any oral argument that the Court may allow at a hearing on this matter.

Dated this 17th day of March, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*_____
Stephen R. Hackett, Esq.
Nevada Bar No. 5010
David B. Barney, Esq.
Nevada Bar No. 14681
410 South Rampart Blvd, Suite 350
Las Vegas, NV 89145
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION AND FACTUAL BACKGROUND**

In a last-ditch effort to avoid honoring the terms of their agreement, Counter-defendants resort to arguing that they have signed and are bound by the Settlement Agreement, but that they have not yet physically "delivered" it—as opposed to sending a copy to opposing counsel by email—and they can therefore hold off on complying with their obligations that must be performed concurrently with the execution and delivery of the contract, indefinitely.   This argument contradicts common sense, as well as the language of the agreement and the representations that Counter-defendants have made to both the Court and CCTC.  It also underscores the Counter-defendants' bad faith and dilatory motives, which warrant the imposition of sanctions against them. Because the Counter-defendants **still** have not complied with their obligations that must be completed at the same time as their execution and delivery of the contract, almost a month after the contract was fully signed and delivered to CCTC, the Court should grant CCTC's Motion to Enforce Settlement and require the Counter-defendants to comply with their obligations due thereunder.  The Court should further impose sanctions on the Counter-defendants for their bad faith conduct, which required CCTC to seek Court intervention to force the Counter-defendants to comply with their own agreements.

**II.      LEGAL ARGUMENT**

> **A.      The Court Should Order the Counter-defendants to Comply with their Obligations in the Settlement Agreement.**

Counter-defendants argue that "[a]lthough the Settlement Agreement and Confession of Judgment have been fully executed, the settlement documents have yet to be delivered because Counter-defendants have yet to provide the funds for the Initial Payment."  ECF No. 60, at 3.  They further argue that because there is no time of the essence clause in the Settlement Agreement, there is no timeframe in which they need to "deliver" the settlement documents to CCTC, along with an original copy of the Confession of Judgment and the Initial Payment.[1]  Both of these arguments

---

[1]      Capitalized terms used, but not defined in this Reply, shall have the meanings given in the Motion.

are without merit.

State law, and in this case Nevada law, governs the Court's interpretation and enforcement of the Settlement Agreement. *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013) (citing *O'Neil v. Bunge Corp.*, 365 F.23d 820, 822 (9th Cir. 2004)). Under Nevada law, "[t]he starting point for the interpretation of any contract is the plain language of the contract." *Brewington v. State Farm Mut. Auto. Ins. Co.*, 45 F. Supp. 3d 1215, 1218 (D. Nev. 2014) (citing *McDaniel v. Sierra Health and Life Ins. Co.*, 53 P.3d 904, 906 (Nev. 2002)). "When a contract contains clear and unequivocal provisions, those provisions shall be construed according to their usual and ordinary meaning." *Id.* (citing *Dickenson v. Nevada*, 877 P.2d 1059, 1061 (Nev. 1994)). Courts should also read a contract as a whole, to give reasonable and harmonious meaning to the entire agreement between the parties. *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993) (citing *Nat'l Union Fire Ins. Co. v. Reno's Exec. Air*, 682 P.2d 1380 (Nev. 1984)).

The clear and unequivocal terms of the Settlement Agreement provide that three things must happen at the same time, for the parties to fully enter into the agreement: **(1)** the parties needed to sign the agreement, which they agreed could be done in counterparts and by way of electronic or facsimile copies, *see* ECF No. 57-2, at 7 (Section 19); **(2)** Counter-defendants Capital Pure Assets, Ltd. ("Capital Pure") and Shiva Prakash ("Shiva") needed to execute and deliver the original copy of the Confession of Judgment to CCTC's counsel, *see id.* at 3 (Section 2(f)) ("**Concurrently with the mutual execution of this Agreement**, Capital Pure and Shiva shall execute and deliver to CCTC's counsel . . . a confession of judgment . . . .") (bold added); and **(3)** Counter-defendants needed to deliver the Initial Payment to CCTC's counsel. *Id.* at 2 (Section 2(a)) ("**Concurrently with their execution and delivery of this Agreement and the Confession of Judgment** (defined below), Counter-defendants shall deliver to CCTC's counsel . . . a certified check or cashier's check in the amount of Fourteen-Thousand Dollars.") (bold added).

Counter-defendants' assertion that there has been no refusal to comply with the terms of the Settlement Agreement, because no "delivery" has occurred, is without any legal or factual basis. ECF No. 60, at 3. As set forth in the plain language of the Settlement Agreement, the parties contemplated the simultaneous delivery of an executed copy of the Settlement Agreement, along

with the original copy of the Confession of Judgment and the Initial Payment, which would trigger the parties' obligation to file a Stipulation and Order for Dismissal of Case with Prejudice, and for Release of Funds Held in Court Registry.  ECF No. 57-2.  It is now clear that when CCTC advised the Court that it intended to file a motion to enforce settlement and for sanctions if this case was not dismissed by February 20, 2025, *see* ECF No. 55, at 3, Counter-defendants provided a signed copy of the Settlement Agreement on February 19, 2025, and promised to deliver the Confession of Judgment and the Initial Payment promptly, for the sole purpose of avoiding that motion practice and not to actually comply with their own obligations.  *See* Declaration of David B. Barney, Esq. ("Barney Decl."), attached hereto as **Exhibit 1**, ¶ 3-4; *see also* e-mail correspondence from Counter-defendants' counsel on February 19, 2025, attached hereto as **Exhibit 2**.

The simple fact of the matter is that when the contract is read as a whole, the structure of the deal is that CCTC receives a total payment of $350,000 before this case is dismissed, and then it receives additional payments after dismissal, which are secured by the Confession of Judgment and the contractual obligation of all of the Counter-defendants to pay CCTC a total amount of $986,000 over time.  *See generally* ECF No. 57-2, at 2-4.  Counter-defendants argue that the Court should interpret the Settlement Agreement as saying that the parties intended to execute the Settlement Agreement first, and then they could deliver the Confession of Judgment and Initial Payment whenever they want to, and the case will not be dismissed until they delivered those items in their discretion.  ECF No. 60, at 3.  This is an absurd reading of the contract, especially in light of the Court making three separate requests for a status report or dismissal papers, and Counter-defendants representing to the Court that "[o]nce the settlement documents have been fully executed, the parties shall file a joint stipulation for dismissal."  ECF No. 55, at 2; *see also Nev. State Educ. Assoc. v. Clark Cnty. Educ. Assoc.*, 482 P.3d 665, 673 (9th Cir. 2021) (providing that a court should not interpret a contract in such a way that "leads to an absurd result.").  Put simply, Counter-defendants were required to deliver the Confession of Judgment and the Initial Payment to CCTC at the same time as the executed Settlement Agreement.  They failed to do so, and they are in breach of the clear terms of the Settlement Agreement.

In an attempt to overcome these facts, Counter-defendants argue that because there is no

"time of the essence" clause in the Settlement Agreement, there is no timeframe for their performance of the subject obligations.  This argument fails as well.

As set forth in the Opposition, "when a contract does not make the time for a party's performance of the essence, either party can make it so by setting a reasonable time for performance and notifying the other party of an intention to abandon the contract if it is not performed within that time." *Mayfield v. Koroghli*, 184 P.3d 362, 346 (Nev. 2008).  As an initial matter, CCTC should not have had to demand a time for the Counter-defendants' performance, as delivery of all the settlement documents, including the original Confession of Judgment and the Initial Payment was supposed to occur at a single "closing" of the settlement transaction. Accordingly, if Counter-defendants contend that they have not "delivered" the settlement documents at all, there is even more reason for the Court to enforce the Settlement Agreement, because the Counter-defendants **still** have failed to fully complete their entry into the agreement by "delivering" the documents to CCTC.

But even if the Court considers their time of the essence argument, CCTC did make demand for their performance within a reasonable time, and Counter-defendants failed to comply with that demand.  On February 19, 2025, Counter-defendants' counsel delivered a copy of the executed Settlement Agreement and Confession of Judgment to CCTC's counsel, by e-mail.  Exhibit 2. Counter-defendants' counsel further advised: "Once we have the Initial Payment check from CPA we will have a runner deliver both the check and the original Confession of Judgment to your office."  *Id.*  The following day, CCTC's counsel asked if the documents would be delivered by the end of the week, and Counter-defendants' counsel advised that he would reach out to Counter-defendants for an update.  *See* Barney Decl., ¶ 4; true and correct copy of such e-mail correspondence, attached hereto as **Exhibit 3**, at 2.

The following Monday, CCTC's counsel asked for a status update and advised that if CCTC did not receive the original Confession of Judgment and the Initial Payment by the close of business on February 25, 2024, CCTC "will have no choice but to file a motion to enforce." Exhibit 3, at 1.  Counter-defendants' counsel never responded, and Counter-defendants did not provide the documents within that timeframe.  *See* Barney Decl., ¶ 4.  Accordingly, even if the

6

Counter-defendants' argument about a time of the essence clause is considered, they breached their obligations under the Settlement Agreement, and Court intervention is necessary to ensure the Counter-defendants' performance and the dismissal of this lawsuit overall.  This is made even more clear by the fact that it has now been almost a month since the Counter-defendants provided the signed agreement, and they **still** have not provided either the original Confession of Judgment or the Initial Payment as required under the Settlement Agreement.  *Id.*

The final argument made in the Opposition, which is made in a footnote but is yet another bad faith effort by the Counter-defendants to avoid their agreed upon obligations, is that only Capital Pure and Shiva have any payment obligations to CCTC under the Settlement Agreement, as opposed to all of the Counter-defendants.  ECF No. 3, n.1.  Once again, this argument is belied by the plain language of the parties' agreement.

It is true that only Capital Pure and Shiva were required under the Settlement Agreement to sign the Confession of Judgment.  *See* ECF No. 57-2, at 2 (Section 2(a) ("Concurrently with the mutual execution of this Agreement, Capital Pure and Shiva shall executed and deliver to CCTC's counsel . . . a confession of judgment in the form attached hereto as **Exhibit B**") (bold in original), 19.  This language makes clear the parties' ability and intent to allocate certain obligations to certain parties, as opposed to obligations of the parties in general, or of certain groups of parties.  Upon a review of the remaining terms of the Settlement Agreement, including the obligation to make the Initial Payment and to make each Quarterly Payment thereafter, it is clear that those obligations are borne by **all of the Counter-defendants**, and not only Capital Pure and Shiva.  By way of example, the obligation to deliver the Initial Payment reads as follows:

> Concurrently with their execution and delivery of this Agreement and the Confession of Judgment (defined below), **Counter-defendants** shall deliver to CCTC's counsel . . . a certified check or cashier's check in the amount of Fourteen-Thousand Dollars ($14,000.00) . . . .

ECF No. 57-2, at 2 (Section 2(b)) (bold added).

The obligation to make all Quarterly Payments likewise states that, "[b]eginning on April 1, 2025, and continuing for a period of twenty-one months thereafter, the **Counter-defendants shall make** eight (8) quarterly payments to CCTC in the amount of One-Hundred-Twenty-Three-

Thousand-Two-Hundred-Fifty Dollars." *Id.* (Section 2(c)) (bold added). The agreement also states that "CCTC's election to file the Confession of Judgment, or to not file it, shall not affect any other rights or remedies available to CCTC in connection herewith." *Id.* at 3-4 (Section 2(i)).

Based on the plain language of the Settlement Agreement, it is clear that the parties decided to differentiate between the obligations of the Counter-defendants, altogether, and Capital Pure and Shiva, on their own. If they wanted to make only Capital Pure and Shiva responsible to pay the Initial Payment and Quarterly Payments, they could have done so; but they did not, and the language of the Settlement Agreement makes this clear. Accordingly, the Court should enforce the Settlement Agreement as written, by **(i)**: requiring the Counter-defendants to deliver the Initial Payment and the Confession of Judgment by no later than the close of business on Friday, March 21, 2025, and **(ii)** immediately disbursing the funds held in the Court's registry as provided for in the Settlement Agreement (the benefit of CCTC's bargain was to have those funds two, if not three months ago, and the value of the funds continue to be diminished until they are released to CCTC). This case can then be dismissed once the funds in the Court's registry are disbursed, and the Confession of Judgment and Initial Payment are delivered to CCTC's counsel.

**B.    The Court Should Impose Sanctions on the Counter-defendants for their Bad Faith Conduct.**

Counter-defendants make two arguments against the Court's imposition of sanctions against them. The first is that there is no basis for the Court to impose sanctions, because there was no breach of the Settlement Agreement and CCTC is just acting "hastily." ECF No. 60, at 3-4. But as set forth above, based on the plain and unambiguous terms of the Settlement Agreement, Counter-defendants have failed to comply with their obligation to timely deliver—or to deliver at all—the Confession of Judgment and the Initial Payment to enable the dismissal of this lawsuit. *See* discussion, *supra*, at 3-8.

To address the comment accusing CCTC of undue "haste," the actual facts at play provide a different story. As set forth in the Motion, the parties reached an agreement on all of the terms of the Settlement Agreement on January 9, 2025. ECF No. 57, at 3. CCTC's counsel then spent over a month attempting to secure the signatures of the Counter-defendants, so this case could be

dismissed. *See* Barney Decl., ¶ 5. During those discussions, Counter-defendants advised that Counter-defendant James P. Chrisman ("Chrisman") was traveling internationally, and that Shiva had an ongoing medical procedure, which made obtaining their signatures untenable at the time. *Id*. They further advised that Counter-defendants Hannah Dawn Prakash ("Hannah") and Vikhyat Prakash ("Vikhyat") had provided their signatures, but that they needed to wait to obtain the final signatures based on travel and the ongoing medical issues. *See id.* Counter-defendants also made these representations to the Court in the Joint Status Report filed on February 6, 2025. ECF No. 3, at 2.

About a week after Counter-defendants submitted their first Joint Status Report, Counter-defendants advised that they no longer intended to move forward with the Settlement Agreement as written, and that they needed to change the terms of the Quarterly Payments, in particular when they started. *See* Barney Decl., ¶ 6. CCTC's counsel advised that the parties had an agreement, and CCTC intended to file a motion to enforce settlement. *Id.*

On February 18, 2025, when the parties were working to prepare a second Joint Status Report, Counter-defendants advised that they were working to secure signatures on the Settlement Agreement as agreed to as of January 9, 2025, but that they now needed the signatures of Hannah and Vikhyat. *Id.* ¶ 7. CCTC's counsel advised that this explanation was completely inadequate, as it conflicted with Counter-defendants' previous story. *Id.*; *see also* true and correct copy of such correspondence, attached hereto as **Exhibit 4**. The following day, Counter-defendants sent a fully executed copy of the Settlement Agreement to CCTC. Exhibit 2. Upon a review of the document, CCTC learned that Counter-defendant Chrisman had signed on his own behalf an on behalf of Counter-defendant James Chrisman, P.C., on February 4, 2025—before Counter-defendants represented to the Court and CCTC's counsel that they could not obtain his signature based on international travel as of February 6, 2025. ECF No. 57-2, at 11.

CCTC has worked in good faith to move this settlement forward for over two months, in the face of Counter-defendants (i) attempting to renege on an renegotiate the terms of the Settlement Agreement after all terms were agreed upon, (ii) misrepresenting the circumstances around their signature of the Settlement Agreement, and (iii) incessantly attempting to delay their

performance and **still** reject the terms they agreed to, in exchange for CCTC releasing its very serious claims for fraud, among others, against the Counter-defendants.  Counter-defendants' attempt to paint CCTC as an impatient party are completely inaccurate.  In reality, Counter-defendants have caused CCTC to incur significant additional attorneys' fees and costs after the parties agreed to a settlement in full.  Requiring them to reimburse CCTC for those fees and costs is therefore an appropriate sanction.

Finally, Counter-defendants argue that the Court should not award CCTC its reasonable costs and attorneys' fees in connection with this matter, because CCTC did not include detail about those charges in the Motion.  CCTC is well aware of the requirements of LR 54-14, as well as the general requirements that must be set forth in a motion for attorneys' fees and costs.  This is exactly why CCTC included in its Motion that if the Court granted a sanction of attorneys' fees and costs against Counter-defendants, CCTC would file a motion for attorneys' fees and costs that would address these requirements and include the costs incurred in connection with the litigation  of Motion. ECF No. 57, at 7.  In the event the Court finds that sanctions are appropriate, CCTC still intends to file a motion for attorneys' fees and costs that addresses these requirements, within a day or two after the Court issues an Order.  For the avoidance of doubt, the Court will have jurisdiction to rule on such a motion irrespective of when a dismissal in this case is entered, and whether the Court maintains ancillary jurisdiction over the Settlement Agreement.  *See K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 969-70 (9th Cir. 2014) ("[T]he district court has broad, inherent authority over collateral matters such as attorney's fees, and such ancillary jurisdiction extends beyond dismissal of the underlying lawsuit"; "Unlike its ancillary jurisdiction to enforce the Settlement Agreement, the court's ancillary jurisdiction over Plaintiffs' motion for attorneys' fees need not have been explicitly 'retained.'").

### C.    The Court Should Maintain Jurisdiction over this Matter Post-Dismissal.

As a result of Counter-defendants' continuing bad faith conduct, the Court should dismiss this case once the conditions precedent to dismissal are satisfied: **(i)** delivery of the original Confession of Judgment and Initial Payment; and **(ii)** disbursement of the funds being held in the Court's registry. If the Court either incorporates the Settlement Agreement into its dismissal Order

by reference or otherwise retains jurisdiction to enforce the terms of the Settlement Agreement in the Order, it will have ancillary jurisdiction to enforce the terms of the Settlement Agreement. *See K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d at 967 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)) ("[C]ourts have ancillary jurisdiction to enforce a settlement agreement only if the parties' obligation to comply with the terms of the settlement agreement has been made a part of the order of dismissal—either by separate provision (such as a provision retaining jurisdiction over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.") (internal quotations omitted).  Such relief is appropriate given the fraud-based claims giving rise to this action, and the Counter-defendants' continued misconduct and misrepresentations, to both the Court and CCTC.

**III.    CONCLUSION**

In light of the above, the Court should enforce the terms of the Settlement Agreement, by: **(i)** requiring the Counter-defendants to deliver the Initial Payment and the Confession of Judgment by no later than the close of business on Friday, March 21, 2025, and **(ii)** immediately disbursing the funds held in the Court's registry as provided for in the Settlement Agreement.  CCTC further requests that the Court sanction the Counter-defendants by way of payment of CCTC's attorneys' fees and costs incurred after January 9, 2025, to be determined after appropriate briefing.

Dated this 17th day of March 17, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*_____
Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
410 South Rampart Blvd., Ste 350
Las Vegas, Nevada 89145
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of March, 2025, a true and correct copy of the above and foregoing **DEFENDANT/COUNTERCLAIMANT CC TECHNOLOGY CORPORATION'S REPLY IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS AGAINST COUNTER-DEFENDANTS** was filed electronically with the Clerk of the Court by submission to the electronic filing and service system (CM/ECF) at the United States District Court, District of Nevada.  CM/ECF will provide copies to all parties and counsel of record registered to receive CM/ECF notification.

*/s/ Jessica Uriostegui*
An employee of Sklar Williams PLLC

**INDEX OF EXHIBITS**

| Exhibit | Description |
| --- | --- |
| 1 | Declaration of David B. Barney, Esq. |
| 2 | Email correspondence dated February 19, 2025 |
| 3 | Email correspondence dated February 19-24, 2025 |
| 4 | Email correspondence dated February 18, 2025 |