UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CAPITAL PURE ASSETS, LTD., <br><br> Plaintiff(s), <br><br> v. <br><br> CC TECHNOLOGY CORPORATION, <br><br> Defendant(s). | Case No. 2:24-cv-00680-NJK[1] <br><br> **ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS** <br><br> [Docket No. 57] |

Pending before the Court is Defendant/ Counterclaimant CC Technology Corporation's ("CCTC") motion to enforce settlement and for sanctions. Docket No. 57. Plaintiff Capital Pure Assets and Counter-Defendants filed a response in opposition. Docket No. 60.[2] CCTC filed a reply. Docket No. 61. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the motion to enforce settlement and for sanctions is GRANTED.

**I.   BACKGROUND**

This case arises out of discussions and agreements to engage in a joint venture, including CCTC's deposit of $336,000 into an escrow account. Docket No. 22-1 at ¶ 8. The escrow funds were the initial step for the parties to allegedly pursue investment projects vis-à-vis standby letters of credit. Capital Pure alleges that the joint venture was meant to focus on a real estate project in Chicago, *see* Docket No. 1 at ¶¶ 15-22, and that CCTC failed to perform its duties in finding viable

---

[1] On August 19, 2024, the case was referred to the undersigned magistrate judge on the parties' consent. Docket Nos. 27, 28.

[2] The case initially involved claims brought by Capital Pure Assets, Ltd. ("Capital Pure") against CCTC. *See* Docket No. 1. CCTC's counterclaims are brought against Capital Pure and those associated with it, Shiva Prakash ("Shiva"), Hannah Dawn Prakash ("Hannah"), and Vikhyat Prakash ("Vikhyat"). *See* Docket No. 5 at ¶¶ 7-10. According to Capital Pure's complaint, Shiva is its chairman, Hannah is its chief executive officer, and Vikhyat is its strategic advisor. Docket No. 1 at ¶ 5; *see also* Docket No. 26-1 at ¶ 2. The counterclaims are also brought against those allegedly handling the escrow, Chrisman P.C. and James Chrisman. *See* Docket No. 5 at ¶¶ 11-12. The Court will refer to these parties individually as warranted or collectively as "Counter-Defendants."

projects, *see id.* at ¶¶ 40-57. CCTC alleges that the joint venture was meant to focus on its "CannaCard" payment system, *see, e.g.*, Docket No. 5 at ¶ 24,[3] but that the joint venture agreement was a sham standby letter of credit scheme and that Capital Pure never intended to move forward with any project, *see, e.g., id.* at ¶¶ 70-78 (alleging fraud). On September 24, 2024, the Court granted CCTC's motion for preliminary injunction, finding that it had sufficiently shown, *inter alia*, a likelihood of success on the merits as to its counterclaims for breach of contract, breach of fiduciary duty, and conversion. Docket No. 42.

On February 6, 2025, the parties filed a joint status report representing that "the parties reached a settlement agreement on December 23, 2024." Docket No. 53 at 2. That status report indicated further that "[t]he parties are in full agreement as to the terms of the settlement documents and are in the process of executing those documents." *Id.* On February 7, 2025, the Court ordered the parties to file either dismissal papers or a further status report by February 18, 2025. Docket No. 54. On February 18, 2025, the parties filed a joint status report, in which CCTC represented that it would file a motion to enforce settlement given the lack of progress on finalizing settlement. Docket No. 55. On February 26, 2025, CCTC filed that motion to enforce settlement and for sanctions, Docket No. 57, which is the matter currently before the Court.

**II.    STANDARDS**

   A.    ENFORCE SETTLEMENT

Courts possess inherent authority to enforce settlement agreements in pending cases. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957-58 (9th Cir. 2021). The construction and enforcement of settlement agreements are governed by state law. *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013). Nevada law requires an offer and acceptance, meeting of the minds, and consideration to constitute an enforceable contract. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). "The starting point for the interpretation of any contract is its plain language." *Miller v. Weinmann*, 2023 WL 5428644, at *4 (D. Nev. Aug. 23, 2023).

---

[3] There is an answer portion of this document and a counterclaims portion of this document. The paragraph citations herein are made to the counterclaims portion of the filing.

B. <u>SANCTIONS</u>

"Holding parties to the terms of executed and valid settlement agreements is critically important." *Harper v. Nev. Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1045 (D. Nev. 2021). The interests of equity, judicial economy, and finality all militate strongly against efforts to renege on a settlement. *See, e.g.*, *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1042 (9th Cir. 2011) (in affirming enforcement of settlement agreement, noting: "At some point litigation must come to an end. That point has now been reached"); *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (enforcing a settlement agreement "has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation"). Particularly given that federal judiciary resources are "strained to the breaking point," courts cannot countenance a party agreeing to settle a case and then subsequently disavowing the settlement when it suits that party. *Doi*, 276 F.3d at 1141. "The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation." *Id.*

Courts have several arrows in their quiver to address improper efforts to renege on a settlement. One potent tool is the imposition of sanctions as an exercise of inherent authority. *Id.* at 1140. "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). Such authority enables courts to fashion appropriate sanctions for conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). "[A]n assessment of attorney's fees is undoubtedly within a court's inherent power." *Id.* at 45.

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. Sanctions are imposed pursuant to inherent authority only upon a finding of bad faith or conduct tantamount to bad faith. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002). Sanctionable conduct includes "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). It is the moving party's burden to demonstrate the party against whom it seeks

3

sanctions acted with the requisite bad faith or improper purpose. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015). "Attempts to renege on a valid settlement agreement lend themselves to such a finding, however." *Harper*, 552 F. Supp. 3d at 1046 & n.13 (collecting cases).

**III.   ANALYSIS**

CCTC seeks relief both in the form of enforcing the settlement agreement and in the form of awarding fees and costs as a sanction.

   A.   ENFORCE SETTLEMENT

There is no dispute that the parties reached a settlement to resolve this case. Docket No. 53. There is also no dispute that the parties finalized a written settlement agreement, which has been signed by all parties. Docket No. 57-2. There is no dispute that a material term of that settlement agreement is for Counter-Defendants to make an initial payment of $14,000. *Id.* at 3. In short, "Counter-[D]efendants acknowledge and agree the parties negotiated, agreed to, and executed the [s]ettlement [a]greement and are bound by its terms." Docket No. 60 at 2. There is also no dispute that, despite the above, Counter-Defendants have not made the initial payment. *See* Docket No. 60 (Counter-Defendants' responsive brief).[4]

Despite the above, Counter-Defendants resist the instant motion with nonsense. They contend that there is no specific date provided in the settlement agreement for the initial payment and, instead, that deadline is only triggered by the delivery of the executed settlement documents. *See* Docket No. 60 at 3. To make this concocted explanation work, Counter-Defendants argue further that they have yet to "deliver" the hardcopy of the settlement documents, even though the documents have been signed and emailed. *See id.* The responsive brief provides further that the reason for the lack of delivery is precisely because Counter-Defendants "have yet to provide the funds for the [i]nitial [p]ayment." *Id.* Hence, Counter-Defendants proffer in circular fashion that they don't have to make the initial payment until they deliver the settlement documents, but that

---

[4] The reply brief on this motion was filed on March 17, 2025. Docket No. 61. The settlement agreement also requires a first quarterly payment of $123,250 to be paid by Counter-Defendants by April 1, 2025. Docket No. 57-2 at 3. It is not clear whether that quarterly payment was made.

4

they don't have to deliver the settlement documents because they don't want to make the initial payment. Against this reality-defying logic, Counter-Defendants contend that the only legal backstop is the need to comply in a "reasonable time" because, they argue, the settlement agreement lacks both a specific deadline and a "time-is-of-the-essence" clause. *Id.* at 2-3 (quoting *Mayfield v. Koroghli*, 184 P.3d 362, 366 (Nev. 2008)).[5]

Counter-Defendants' position is preposterous. As argued by CCTC (*e.g.*, Docket No. 61 at 4), the plain language of the settlement agreement contemplates the concurrence of the execution of the settlement agreement, delivery of the settlement documents, and making of the initial payment:

- "*Concurrently* with the mutual execution of this Agreement, Capital Pure and Shiva shall execute and deliver to CCTC's counsel referenced in Section 2(a) above, a confession of judgment . . ." Docket No. 57-2 at ¶ 2(f) (emphasis added)
- "*Concurrently* with their execution and delivery of this Agreement and the Confession of Judgment (defined below), Counter-defendants shall deliver to CCTC's counsel . . . a certified check or cashier's check in the amount of Fourteen-Thousand Dollars ($14,000.00) (the "Initial Payment") . . ." Docket No. 57-2 at ¶ 2(a) (italics added; bolding omitted).

This contractual language requires "concurrent[]" action, which by definition means that these actions were meant to take place at the same time. *E.g.*, Mirriam-Webster Dictionary (defining "concurrent" as "operating or occurring at the same time"). All parties signed the settlement agreement by February 19, 2025, Docket No. 57-2 at 10-12, and the pertinent Counter-Defendants signed the confession of judgment on February 18, 2025, *id.* at 20. Therefore, the contemplated deadline to deliver the settlement documents and make the initial payment lapsed months ago.[6]

---

[5] Counter-Defendants also argue that the motion to enforce is "premature" in light of these other arguments. *E.g.*, Docket No. 60 at 3. To be perfectly clear, Counter-Defendants still had not complied with their obligations when they filed their responsive brief on March 12, 2025, Docket No. 60 at 3, or when CCTC filed its reply brief on March 17, 2025, Docket No. 61.

[6] Even were the Court to resort to a more amorphous "reasonable time" approach, as Counter-Defendants suggest, they would still lose. *See, e.g.*, Docket No. 61 at 6-7.

5

In short, Counter-Defendants must immediately make the initial payment and deliver the necessary paperwork for dismissal papers to be filed.[7]

### B. SANCTIONS

Having decided to grant the motion to enforce settlement, the Court turns to CCTC's request for sanctions in the form of attorney's fees and costs. As discussed above, Counter-Defendants' position in support of their failure to comply with the settlement agreement is preposterous and amounts to attempted gaslighting. In addition, Counter-Defendants appear to have used the interim time period to string CCTC along while they delayed in their obvious obligations. *See, e.g.*, Docket No. 61-2 at 2 (email from February 19, 2025, indicating that "[o]nce we have the [i]nitial [p]ayment check from [Capital Pure] we will have a runner deliver both the check and the original [c]onfession of [j]udgment to your office"). It is plain that Counter-Defendants are engaged in bad faith litigation conduct.

In addition, Counter-Defendants provide scant argument against the imposition of sanctions. First, Counter-Defendants contend that they "executed the Settlement Agreement and are complying therewith." Docket No. 60 at 4. For the reasons discussed above, that bald contention of compliance is false. Second, Counter-Defendants contend that an award of fees is unwarranted because CCTC has not yet substantiated its request with appropriate documentation. *Id.* Of course, an award of fees in this context generally includes the hours spent for the motion practice to enforce settlement and for sanctions, including the reply brief. *Cf. Harper*, 552 F. Supp. 3d at 1047. The Court finds it appropriate to decide herein that sanctions are properly imposed with leave for CCTC to file papers substantiating the amount it seeks to recover. *Cf. Walker v. N. Las Vegas Police Dept.*, 2016 WL 8732300, at *5 (D. Nev. May 13, 2016).

In short, CCTC is entitled to an award of attorney's fees and costs as a sanction.

---

[7] Without significant elaboration, CCTC asks that the Court retain jurisdiction over the settlement agreement following dismissal. Docket No. 57 at 6. The Court declines to consider this argument raised without meaningful development. *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).

6

## IV. CONCLUSION

For the reasons discussed more fully above, CCTC's motion to enforce settlement and for sanctions is **GRANTED**. No later than noon on April 21, 2025, Counter-Defendants must deliver the original copy of the confession of judgment and must make the initial payment of $14,000. Counter-Defendants must file a notice of compliance by 5:00 p.m. on April 21, 2025. **Failure to comply with this order may result in additional sanctions and/or in the initiation of contempt proceedings.**

In addition, the parties must file dismissal papers by May 1, 2025. CCTC must file a motion to calculate sanctions by May 8, 2025. That motion must include all required argument and factual support to calculate sanctions.

IT IS SO ORDERED.

Dated: April 17, 2025

                                                                                    _____
Nancy J. Koppe
United States Magistrate Judge