Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile:  (702) 360-0000
Email: shackett@sklar-law.com
        dbarney@sklar-law.com
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CAPITAL PURE ASSETS, LTD, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CC TECHNOLOGY CORPORATION, a Colorado corporation; DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-00680-NJK<br><br>**DEFENDANT/COUNTERCLAIMANT CC TECHNOLOGY CORPORATION'S SECOND MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS AGAINST COUNTER-DEFENDANTS**<br><br>**Hearing Date:  April 29, 2025**<br>**Hearing Time: 2:00 p.m.** |
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br><br>Counterclaimant,<br><br>v.<br><br>CAPITAL PURE ASSETS, LTD, a Nevada limited liability company; SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, an individual; VIKHYAT PRAKASH, an individual; JAMES CHRISMAN, P.C., a Nevada professional corporation; JAMES P. CHRISMAN, an individual; DOES 1 through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br><br>Counter-defendants. | |

1

Defendant/Counterclaimant CC Technology Corporation ("CCTC"), by and through its attorneys, the law firm of Sklar Williams PLLC, hereby files this Second Motion to Enforce Settlement and for Sanctions against Counter-defendants (the "Motion"), pursuant to the Court's Order dated April 22, 2025 (ECF No. 65; the "Order").

This Motion is made and based upon the following Memorandum of Points and Authorities, the exhibits attached hereto, all of the papers and pleadings on file in this action, and any oral argument that the Court may entertain at the hearing on this matter.

Dated this 23rd day of April, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*_____
Stephen R. Hackett, Esq.
Nevada Bar No. 5010
David B. Barney, Esq.
Nevada Bar No. 14681
410 South Rampart Blvd, Suite 350
Las Vegas, NV 89145
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.      INTRODUCTION AND FACTUAL BACKGROUND**

On February 26, 2025, CCTC filed a Motion to Enforce Settlement and for Sanctions against Counter-defendants (ECF No. 57).  In the Motion, CCTC argued that the parties had reached a settlement of all claims in this case, but that the Counter-defendants had failed to comply with their obligations in connection with the settlement, including delivering an initial payment of $14,000 and an original copy of a confession of judgment to CCTC's counsel.  ECF No. 57, at 6. CCTC requested that the Court compel the Counter-defendants to comply with those obligations, and that it award CCTC its attorneys' fees and costs incurred in bringing the motion as a sanction against the Counter-defendants, for their failure to comply with the terms of the settlement agreement.  *Id.* at 6-7.

On March 12, 2025, Counter-defendants filed an Opposition to Motion to Enforce Settlement Agreement (ECF No. 60), and on March 17, 2025, CCTC filed a reply brief in support of its motion (ECF No. 61).  On April 17, 2025, after reviewing the moving papers, the Court entered an Order Granting Motion to Enforce Settlement and for Sanctions (ECF No. 62; the "Enforcement Order").  In the Enforcement Order, the Court found that the parties had reached a settlement to resolve this case, and that the Counter-defendants had failed to comply with their obligation to deliver the initial payment and the confession of judgment to CCTC's counsel, concurrently with their execution and delivery of the settlement agreement.  ECF No. 62, at 4-6. The Court ordered the Counter-defendants to "deliver the original copy of the confession of judgment and . . . make the initial payment of $14,000," no later than noon on April 21, 2025. ECF No. 62, at 7.

The Court also found that the Counter-defendants "engaged in bad faith litigation conduct," which warrants the imposition of sanctions through an award of CCTC's reasonable attorneys' fees and costs incurred in connection with bringing the motion to enforce settlement.  *Id.* at 6. The Court ordered CCTC to file a motion to calculate sanctions by May 8, 2025, and further ordered the parties to dismiss this case by May 1, 2025, after the Counter-defendants deliver the initial payment and confession of judgment to CCTC.  *Id.*  The Court made clear that a "**[f]ailure to**

**comply with [its] order may result in additional sanctions and/or in the initiation of contempt proceedings**." *Id.*

On April 21, 2025, Counter-defendants' counsel filed a notice of "partial" compliance (ECF No. 63), which advised the Court that Counter-defendants' counsel delivered the original confession of judgment to CCTC's counsel, by noon that day. ECF No. 63, at 2. The notice further advised, however, that "[b]ased upon counsel's knowledge, information and belief the initial payment has not yet been tendered in accordance with the Court's order." *Id.* This fact was confirmed by a Notice of Noncompliance with Court Order (ECF No. 64; the "Notice of Noncompliance") filed by CCTC's counsel the same day, which advised the Court that the Counter-defendants failed to make the initial payment of $14,000 by noon on April 21, 2025, as required by the Enforcement Order. ECF No. 64, at 2.

In the Notice of Noncompliance, CCTC's counsel made several requests in light of the Counter-defendants' failure to comply with the Enforcement Order, including: (i) that the Court—once again—order the Counter-defendants to deliver the initial payment of $14,000 to CCTC's counsel; (ii) that it order the Counter-defendants to make the first "Quarterly Payment" of $123,250 to CCTC, which was required to be made by the Counter-defendants on April 1, 2025; (iii) that the Court order disbursement of the funds held in the Court's registry, in the amount of $336,000, to Sklar Williams PLLC in accordance with the terms of the settlement agreement; and (iv) that the Court award CCTC its reasonable attorneys' fees and costs incurred as a result of the Counter-defendants' continued failure to comply with the Court's orders and the terms of the settlement agreement. *Id.* at 2-3. CCTC also requested that the Court enter an Order to Show Cause why the Counter-defendants should not be held in contempt for their failure to comply with the Court's orders. *Id.* at 3.

On April 22, 2025, the Court entered an Order (ECF No. 65) in response to the notices filed by counsel. In its Order, the Court found that the Counter-defendants violated the order requiring them to deliver the initial payment of $14,000 to CCTC's counsel. ECF No. 65, at 1. The Court noted the requests made in CCTC's Notice of Noncompliance, and it ordered CCTC to file a motion in support of those requests, to be briefed in advance of a hearing on April 29, 2025. *Id.*

at 1-2. The Court ordered the Counter-defendants to appear at that hearing in person, and it further advised that "**[f]ailure to comply with this order may result in additional sanctions and/or the imposition of contempt-related remedies, including issuance of arrest warrants and remand into the custody of the United States Marshal Service**." *Id.* at 2. CCTC files this Motion in accordance with the Court's Order dated April 22, 2025 (ECF No. 65), and in support of the requests set forth in its Notice of Noncompliance (ECF No. 64).

## II.     LEGAL ARGUMENT

### A.     The Court Should Further Enforce the Settlement Agreement, in light of the Counter-defendants' Continued Refusal to Comply with their Obligations thereunder.

It is well established that a "trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (quoting *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969)). "A settlement agreement is binding when the parties have a meeting of the minds as to all essential terms to resolve the case." *Peyman v. Rayhan*, No. 2:09-cv-01384-KJD-LRL, 2011 WL4527932, at *1 (D. Nev. Sept. 28, 2011) (citing *May v. Anderson*, 119 P.3d 1254, 1258-59 (Nev. 2005)). A motion to enforce a settlement agreement essentially is an action to specifically enforce a contract, and a district court has the power to enforce a completed settlement agreement. *See Sagastume v. Wireless Comms. of Nevada#7 LLC*, No. 2:19-cv-00997-RFB-VCF, 2021 WL 3566369, at *1 (D. Nev. Jan. 27, 2021) (citing *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989); (*Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)).

The parties do not dispute, and the Court has already found, that the parties entered into a valid and binding "Mutual Release and Settlement Agreement" (the "Settlement Agreement"), to resolve this case in its entirety. ECF No. 62, at 4. A copy of the Settlement Agreement is filed in this matter at ECF No. 57-2. *Id.* The only question in front of the Court is, therefore, whether the Counter-defendants have failed to comply with terms of the Settlement Agreement, such that the Court's enforcement of the violated terms is warranted.

As the Court has aptly stated, "[h]olding parties to the terms of executed and valid

settlement agreements is critically important." ECF No. 62, at 3 (citing *Harper v. Nev. Prop. 1, LLC*, 552 F. Supp.3d 1033, 1045 (D. Nev. 2021)). This is because "[s]ettlement agreements are designed to end litigation, not create it." *Harper*, 552 F. Supp. 3d at 1043 (citing *In re City Equities Anaheim, Ltd.*, 22 F.3d at 957). Instead of following this principle, the Counter-defendants have chosen to waste the Court's time and the resources of both the Court and CCTC, by refusing to honor virtually any of their promises set forth in the Settlement Agreement. This has led to CCTC forgoing its very serious claims for fraud, among others, and receiving nothing in return when it was entitled to receive $350,000 months ago, and then another $986,000 over time.

       **i.**      *The Court Should Further Enforce Section 2(a) of the Settlement Agreement, by Requiring the Counter-defendants' to Deliver the Initial Payment to CCTC.*

The Court has already found that the Counter-defendants breached their obligation to deliver the initial payment of $14,000 and the original confession of judgment concurrently with their execution of the Settlement Agreement, and that enforcement of those terms is therefore appropriate. ECF No. 62, at 4-6. But because the Counter-defendants still have not delivered the initial payment to CCTC, the Court should again order them to comply with that provision.

In addition, since CCTC filed its initial motion to enforce the Settlement Agreement, Counter-defendants have further breached the agreement, and CCTC has faced further harm as a result of the Counter-defendants' obstinance. The Court should therefore enforce the additional terms of the Settlement Agreement, which have recently come into play, in addition to the initial terms it enforced, but which the Counter-defendants still refuse to comply with.

       **ii.**     *The Court Should Enforce Section 2(b) of the Settlement Agreement, by Releasing the Funds Held in the Court Registry.*

The first of these terms is the Court's release of the funds being held in the Court registry. On September 24, 2024, the Court entered an Order Granting Preliminary Injunction (ECF No. 42), in which it ordered the Counter-defendants to deposit with the Court an amount of $336,000, to be held during the pendency of this matter. ECF No. 42, at 14. Counter-defendants complied with the Court's order, by depositing that amount with the Court on September 30, 2024. ECF No. 44.

As a critical part of the Settlement Agreement, the parties agreed that they would stipulate to the Court's release of the $336,000 to CCTC, by check made payable to CCTC's counsel.  ECF No. 57-2, at 13-15.  The Settlement Agreement states that "[w]ithin three (3) business days of Counter-defendants' delivery of the Initial Payment as set forth above, the Parties shall file in the Lawsuit a 'Stipulation and Order for Dismissal of Case with Prejudice, and for Release of Funds Held in Court Registry' . . . in the form attached hereto as **Exhibit A**."  *Id.* at 2 (Section 2(b)) (bold in original).  The agreement further provides: "The Stipulation and Order shall . . . direct the Court to release the Court Deposit to CCTC, through its counsel."  *Id.* at 1 (defining the $336,000 deposited with the Court as the "Court Deposit"), 2 (Section 2(b)).

The actual Stipulation and Order agreed to by the parties, which was attached to the Settlement Agreement as Exhibit A, makes these terms even clearer.  As set forth therein, the parties agreed as follows:

> The parties stipulate and agree that the funds currently held in the Court's registry in connection with this matter, in the amount of Three-Hundred-Thirty-Six-Thousand Dollars ($336,000.00), shall be released to counsel for CCTC, by check made payable to "Sklar Williams PLLC."

*Id.* at 14.

The parties then included the following language in the proposed Order for the Court's review:

> In light of the above Stipulation, it is hereby ORDERED, ADJUDGED AND DECREED that the funds currently held in the Court's registry in connection with this matter, in the amount of Three Hundred Thirty-Six Thousand Dollars and No Cents ($336,000.00) shall be released to counsel for CCTC, by check made payable to "Sklar Williams PLLC."

*Id.* at 15.

In light of this language, there can be no dispute that the parties agreed to release the funds in the Court registry, in the amount of $336,000, to CCTC through its counsel.  Instead of taking the steps necessary to effectuate these terms, by delivering the original confession of judgment and the initial payment to CCTC's counsel, *see* ECF No. 57-2, at 2 (Section 2(a)-(b)), Counter-defendants have chosen to hold these funds hostage, by refusing to comply with the parties' agreements that would trigger their filing of a stipulation for the release of the subject funds.  This,

notwithstanding the Court ordering them to do so through the Enforcement Order.  ECF No. 62, at 7.

The Court should not reward the Counter-defendants' bad faith refusal to comply with both the terms of the Settlement Agreement and the Court's orders, so they can delay CCTC's receipt of the funds it is entitled to receive.  Not only is CCTC harmed by the continued delay of its receipt of funds, inasmuch as it cannot use those funds and they are not accruing interest since the time they were supposed to be disbursed in February, at the latest, but the whole point of CCTC receiving those funds is to help pay off the loan it took out to pay that amount to the Counter-defendants in the first place.  ECF No. 5, ¶ 32; *see also* Declaration of Robert Lang ("Lang Decl."), attached hereto as **Exhibit 1**, ¶ 3.  The longer the Counter-defendants are able to continue delaying disbursement of the funds to CCTC, the more CCTC continues to be harmed.

To effectuate the terms of the Settlement Agreement, and to bring this case closer to an end, the Court should release the funds held in the Court registry to CCTC, in accordance with the terms of the Settlement Agreement.  The Court has authority to do so based on the express agreement of the parties set forth in the Settlement Agreement.  The parties have released all claims in the litigation, which may have otherwise related to the funds, and they have unambiguously agreed to the Court's release of the funds to CCTC.  ECF No. 57-2, at 2 (Section 2(b)), 4 (release), 13-15 (agreed upon stipulation).  The Court should therefore disburse the funds to CCTC, through its counsel, to enforce and effectuate the terms of the Settlement Agreement.

### iii. *The Court Should Enforce Section 2(c) of the Settlement Agreement, by Requiring the Counter-defendants to Pay the First Quarterly Payment.*

The Court should also enforce Section 2(c) of the Settlement Agreement, which the Counter-defendants have also breached.  As the Court noted in the Enforcement Order, CCTC filed a reply in support of its first motion to enforce settlement before the Counter-defendants had to make their first "Quarterly Payment" under the Settlement Agreement.  ECF No. 62, at 4 n.4.  As it appears the Court may have anticipated, the Counter-defendants have breached that provision by failing or refusing to make the first Quarterly Payment of $123,250 to CCTC, by April 1, 2025.  *See* Lang Decl., ¶ 4.

Section 2(c) of the Settlement Agreement provides as follows, regarding the Counter-defendants' obligation to make Quarterly Payments:

> Beginning on April 1, 2025, and continuing for a period of twenty-one months thereafter, the Counter-defendants shall make eight (8) quarterly payments to CCTC in the amount of One-Hundred-Twenty-Three-Thousand-Two-Hundred-Fifty Dollars ($123,250.00) (each, a "**Quarterly Payment**"), until the Settlement Amount is paid in full.  For the avoidance of doubt, the Quarterly Payments shall be made on the following dates: (i) April 1, 2025; (ii) July 1, 2025; (iii) October 1, 2025; (iv) January 1, 2026; (v) April 1, 2026; (vi) July 1, 2026; (vii) October 1, 2026; and (viii) January 1, 2027.

ECF No. 57-2, at 2 (Section 2(c)).

Counter-defendants had a clear and unambiguous obligation to make the first Quarterly Payment to CCTC, on April 1, 2025.  But as they have done with virtually **all** of their other obligations under the Settlement Agreement, they simply failed or refused to comply with that term.  Lang Decl., ¶ 4.  The Court should therefore enforce Section 2(c) of the Settlement Agreement, by ordering the Counter-defendants to comply with that term by making the first Quarterly Payment to CCTC, immediately.

**B.      The Court Should Enforce the Settlement Agreement prior to Dismissal or, in the Alternative, Retain Jurisdiction to Enforce the Agreement after Dismissal.**

Through the Settlement Agreement, the parties agreed to take certain steps relating to the resolution of this case in its entirety, including dismissal.  The basic process that was agreed to by the parties was as follows: **(1)** the parties would execute the Settlement Agreement, and at the same time the Counter-defendants would deliver to CCTC the original confession of judgment and a check for $14,000, *see* ECF No. 57-2, at 2 (Section 2(a)); **(2)** within three business days of the Counter-defendants' delivery of the check for $14,000, the parties would file a Stipulation and Order for Dismissal of Case with Prejudice, and for Release of Funds Held in Court Registry," which, upon the Court's approval, would release the funds held in the Court registry to CCTC's counsel and dismiss this case, *see id.* at 2 (Section 2(b)), 13-15; **(3)** Counter-defendants would continue to make Quarterly Payments to CCTC, in the amount of $123,250, until the total Settlement Amount of $1,336,000 had been paid to CCTC. *Id.* at 2-3 Section 2(c)-(e).

As a result of the Counter-defendants' breach of Settlement Agreement, and then its

violation of the Enforcement Order, this case has continued well past the parties' agreed upon schedule for dismissal, and even the Court's extended schedule set forth in the Enforcement Order. ECF No. 62, at 7. Not only has this case been continued, but there remains a live controversy regarding the Counter-defendants' violation of both the Settlement Agreement and this Court's orders, which warrants additional litigation.

"Courts possess inherent authority to enforce settlement agreements in pending cases." ECF No. 62, at 2 (citing *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957-58 (9th Cir. 2021)). Because this case has not been dismissed, it remains pending and thus the Court has continuing jurisdiction to enforce the Settlement Agreement. In addition, since CCTC filed its original motion to enforce settlement, Counter-defendants have further breached the Settlement Agreement by failing to make the first Quarterly Payment, which was due on April 1, 2025. *See* discussion, *supra* at 8-9.

Counter-defendants have proven that they do not intend to comply with their obligations under the Settlement Agreement, and that they simply do not care about their contractual obligations or the orders of this Court. They have made clear that unless and until the Court orders them to comply with the Settlement Agreement—and even then it remains uncertain—they have no intention of paying CCTC the total amount of $1,336,000 they promised to pay, in exchange for CCTC dropping its claims. To ensure that CCTC has any chance of recouping even a portion of those funds, and to ensure that its orders and the litigation process are respected, this Court should exercise its inherent powers to enforce the parties' agreement and not dismiss this matter until the Counter-defendants' obligations under the Settlement Agreement are satisfied, including their obligation to make all Quarterly Payments going forward.

In the alternative, if the Court is inclined to dismiss this case in the short-term, it should retain jurisdiction over the Settlement Agreement, to ensure that the Counter-defendants do not get away with their bad faith conduct, which surely will continue in the absence of court supervision. CCTC acknowledges that under the terms of the Settlement Agreement, once it receives the initial payment of $14,000 and the funds in the Court registry, the case was set to be dismissed with the Counter-defendants having post-dismissal payment obligations. *See generally*

10

ECF No. 57-2, at 2 (Section 2(a)-(c)). If the Court is inclined to enforce the terms of the Settlement Agreement more closely than the request made above, *i.e.*, by dismissing this case once the initial payment and the $336,000 held by the Court are delivered to CCTC, it should retain jurisdiction to enforce the Settlement Agreement in light of the Counter-defendants' past—and certainly future—disregard for the Court's directives and the terms of the parties' agreement.

The Ninth Circuit has held that "courts have ancillary jurisdiction to enforce a settlement agreement . . . if the parties' obligation to comply with the terms of the settlement agreement has been made part of the order of dismissal—either by separate provision (such as a provision retaining jurisdiction over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014) (citing *Kokkonen v. Guardia Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994)) (internal quotations omitted). If one of these requirements is met, a court would have ancillary jurisdiction that arises from a breach of the court's dismissal order. *Id.*

This case is the exact situation in which a court should retain jurisdiction over the terms of a settlement agreement, where the Counter-defendants have proven themselves to be untrustworthy and having complete disregard for their legal obligations. Accordingly, if the Court is inclined to dismiss this case in the short-term, *i.e.*, prior to the date by which the Counter-defendants are required to pay the entire Settlement Amount to CCTC, any dismissal order entered by the Court should either (i) expressly state that the Court retains jurisdiction over any breach of the Settlement Agreement, which would include any future breach of the Counter-defendants' payment obligations relating to the Quarterly Payments and/or the filing of the Confession of Judgment, should that be appropriate, *see* ECF No. 57-2 (already containing the caption and case number of this matter), or (ii) incorporate the terms of the Settlement Agreement into the order. This is the only way to ensure that the Counter-defendants are held responsible, and such relief is appropriate in light of their pattern of bad faith refusal to comply with the terms of the Settlement Agreement and this Court's orders.

To address a final issue raised by the Counter-defendants in previous briefing on this issue, the Counter-defendants will likely argue that the Court may only retain jurisdiction over the

Settlement Agreement if the parties' consented to the Court doing so.  Aside from the fact that they have cited no authority for that general proposition, the Counter-defendants' analysis is incorrect.

A court's decision to retain ancillary jurisdiction over a settlement agreement is within the court's discretion.  *See Wright v. Prudential Ins. Co. of Am.*, 285 F. Supp. 515, 520 (D. N.J. 2003) (citing *Kokkonen*, 511 at 381-82).  Moreover, if the Court is not inclined to delay dismissal until the Counter-defendants' obligations under the Settlement Agreement are satisfied in full, in light of the Counter-defendants' refusal to dismiss the case based on the parties' stipulation, CCTC's request for dismissal is now made under Fed. R. Civ. P. 41(a)(2), as opposed to Rule 41(a)(1)(ii), which would have required that all parties file a stipulation for dismissal.  In *Kokkonen*, the United States Supreme Court held that if a dismissal is based upon Rule 41(a)(2), "the parties' compliance with the terms of the settlement contract (or the court's 'retention of jurisdiction' over the settlement contract) may, **in the court's discretion**, be one of the terms set forth in the order." *Kokkonen*, 511 U.S. at 381-82 (bold added).

A Rule 41(a)(2) dismissal generally comes into play when the parties cannot agree to the terms of a dismissal, and a party nonetheless seeks to obtain dismissal upon the court's approval. *See Vuz v. DCSS III, Inc.*, No. 20-cv-246-GPC-AGS, 2021 WL 4333552, at *3 (S.D. Cal. Sept. 22, 2021).  "The Ninth Circuit has instructed that a district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Williams v. Peralta Comm. Coll. Dist.*, 227 F.R.D. 538, 538 (N.D. Cal. 2005) (citing *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001)) (internal quotations omitted). "Legal prejudice means prejudice to some legal interest, some legal claim, [or] some legal argument." *Id.* (citing *Smith*, 263 F.3d at 976).

Counter-defendants cannot show any legal prejudice if the case is dismissed, because all of their claims in this lawsuit were expressly released and discharged by the Settlement Agreement. ECF No. 57-2, at 4 (Section 3).  Therefore, if the Court is inclined to dismiss this case before all of the Counter-defendants' payment obligations are satisfied, it should dismiss this case under Rule 42(a)(2) and include in its dismissal order an order that it retains jurisdiction over the

Settlement Agreement or that the terms of the Settlement Agreement are incorporated into the dismissal order.

This is the only way CCTC has any chance to be made whole in light of the parties' agreement, and the Counter-defendants should not be allowed to simply enter into a settlement agreement to resolve the case and then disappear. The Court's retention of jurisdiction over this matter—whether pre- or post-dismissal—is also in the interest of judicial economy, inasmuch as another result would require CCTC to file a new lawsuit upon the Counter-defendant's inevitable breach of the Settlement Agreement, and then require a new judge to familiarize herself with the parties, the facts, etc., instead of having this Court enforce the agreements and orders with which it is already familiar. The Court should therefore delay its entry of dismissal until the Counter-defendants' payment obligations are satisfied, or retain jurisdiction over the settlement as part of a dismissal.

**C.      The Court Should Hold the Counter-defendants in Contempt for a Failure to Comply with the Court's Orders regarding the Settlement Agreement.**

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). "Civil contempt is appropriate . . . when a party fails to comply with a court order that is both specific and definite." *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989) (citing *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984)). The standard for finding a party in civil contempt is well established:

> The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.

*F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citing *Stone v. City and Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)).

The Court should hold the Counter-defendants in contempt for a clear and undisputed violation of the Enforcement Order. The Enforcement Order was specific and definite, as it ordered the Counter-defendants to deliver the initial payment to CCTC. ECF No. 62, at 7.

Specifically, the Order provided that "[n]o later than noon on April 21, 2025, Counter-defendants must deliver the original copy of the confession of judgment and must make the initial payment of $14,000." ECF No. 62, at 7. Counter-defendants refused to do so, notwithstanding the Court's orders. *See* Declaration of David B. Barney, Esq., attached hereto as **Exhibit 2**, ¶ 3.

As a result of the Counter-defendants' failure to comply with the Enforcement Order (which also would have had the effect of dismissing this lawsuit and the release of $336,000 to CCTC, *see* ECF No. 57-2, at 13-15; ECF No. 62, at 7), CCTC has suffered additional damage by having to file yet another motion to enforce the Settlement Agreement, and waiting even longer to receive, at a minimum, the initial payment of $14,000 and the $336,000 being held in the Court registry.

To coerce obedience to the Court's orders, and to compensate CCTC for the injuries resulting from the contemptuous conduct, the Court should require the Counter-defendants to (i) reimburse CCTC for its reasonable attorneys' fees and costs incurred in connection with bringing this Motion, through the time of the upcoming hearing on this matter, to be determined after appropriate briefing, *see Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 n.5 (9th Cir. 2006) (finding that an award of costs and reasonable attorneys' fees incurred in connection with a contempt motion was "remedial," and thus an appropriate sanction); and (ii) pay interest on the initial payment and the $336,000 in the Court registry, respectively, at the Nevada statutory rate of interest, from the time they were supposed to be paid, until the time they are paid. *See Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1107 (9th Cir. 1998) (providing that state law governs prejudgment interest in diversity cases, as no judgment or dismissal has been entered); NRS 17.130(2).

For the initial payment, interest would accrue at the rate of 10% from April 21, 2025, to the date on which the initial payment is delivered to CCTC (a per diem rate of $3.84), and for the $336,000 held with the Court, interest would accrue at the rate of 10% from April 24, 2025 (three days after the initial payment is delivered, *see* ECF No. 57-2, at 2 (Section 2(b)), to the date on which the funds are delivered to CCTC (a per diem rate of $92.05). The Court should of course impose whatever other criminal or civil contempt sanctions it may deem appropriate, but it should

at least impose the above-referenced sanctions on the Counter-defendants, to make CCTC whole in light of the Counter-defendants' contemptuous conduct.

**D.      Additional Sanctions Are Appropriate based on Counter-defendants' Continued Improper Conduct.**

"Holding parties to the terms of executed and valid settlement agreements is critically important, as is deterring such behavior from the outset." *Harper v. Nevada Property 1, LLC*, 552 F. Supp. 3d 1033, 1045 (2021).  Courts have a number of powers at their disposal, including the authority to impose sanctions, where a party refuses to comply with its obligations under an enforceable settlement agreement to resolve litigation. *Id.* at 1045-46.  The Ninth Circuit has affirmed the imposition of sanctions under a district court's inherent authority, where parties had agreed to settle a case and a party refused to honor its agreements. *Id.* at 1046 (citing *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1141 (9th Cir. 2002)).

The Court has already found it appropriate to award CCTC its reasonable attorneys' fees and costs as a sanction, in connection with its original motion to enforce settlement.  ECF No. 62, at 6.  At a minimum, it should do the same on this Motion, either as sanction for the Counter-defendants' violation of the Settlement Agreement in the ways discussed above, or as a civil contempt sanction as addressed at pp.13-14, *supra*.  *See Harper*, 552 F. Supp. 3d at 1046-47 (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103-04, 109 (2017)).  The Court should also award the interest requested above on the initial payment and the $336,000 held by the Court, but because CCTC is also damaged as a result of the Counter-defendants' failure to pay the first Quarterly Payment, it should require the Counter-defendants to pay interest on that amount as well, at the statutory rate of 10% from April 1, 2025, to the date on which it is paid in full (a per diem rate of $33.77).  *See* NRS 17.130(2); *see also Harper*, 552 F. Supp. 3d at 1046-47.  The Court should of course impose any other sanctions it deems appropriate, as a result of the Counter-defendants' continued breach of the Settlement Agreement.

**III.      CONCLUSION**

In light of the above, the Court should enforce the terms of the Settlement Agreement by ordering the Counter-defendants to comply with their obligations thereunder, including

(i) delivering the initial payment to CCTC, and (ii) making the Quarterly Payment of $123,250 to CCTC, immediately.  The Court should also release the funds held in the Court registry to CCTC and retain jurisdiction over this matter, either pre- or post-dismissal, to ensure the Counter-defendants comply with the terms of the Settlement Agreement.  Finally, the Court should impose both contempt sanctions and sanctions regarding the Counter-defendants' repeated failure to comply with the Settlement Agreement and the Court's orders, by awarding CCTC its reasonable attorneys' fees and costs incurred as a result of the Counter-defendants' conduct, and by requiring the Counter-defendants to pay interest on all late amounts owed under the Settlement Agreement, until paid in full.

Dated this 23rd day of April, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*_____
Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
410 South Rampart Blvd., Ste 350
Las Vegas, Nevada 89145
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 23rd day of April, 2025, a true and correct copy of the above and foregoing **DEFENDANT/COUNTERCLAIMANT CC TECHNOLOGY CORPORATION'S SECOND MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS AGAINST COUNTER-DEFENDANTS** was filed electronically with the Clerk of the Court by submission to the electronic filing and service system (CM/ECF) at the United States District Court, District of Nevada.  CM/ECF will provide copies to all parties and counsel of record registered to receive CM/ECF notification.

 */s/ David B. Barney*_____
An employee of Sklar Williams PLLC

17

**INDEX OF EXHIBITS**

**EXHIBIT**          **DESCRIPTION**

1                    Declaration of Robert Lang

2                    Declaration of David B. Barney, Esq.