Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile:  (702) 360-0000
Email: shackett@sklar-law.com
          dbarney@sklar-law.com
*Attorneys for Defendant/Counterclaimant
CC Technology Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CAPITAL PURE ASSETS, LTD, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CC TECHNOLOGY CORPORATION, a Colorado corporation; DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-00680-NJK<br><br>**DEFENDANT/COUNTERCLAIMANT CC TECHNOLOGY CORPORATION'S REPLY IN SUPPORT OF SECOND MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS AGAINST COUNTER-DEFENDANTS**<br><br>**Hearing Date: April 29, 2025**<br>**Hearing Time: 2:00 p.m.** |
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br><br>Counterclaimant,<br><br>v.<br><br>CAPITAL PURE ASSETS, LTD, a Nevada limited liability company; SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, an individual; VIKHYAT PRAKASH, an individual; JAMES CHRISMAN, P.C., a Nevada professional corporation; JAMES P. CHRISMAN, an individual; DOES 1 through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br><br>Counter-defendants. | |

1

Defendant/Counterclaimant CC Technology Corporation ("CCTC"), by and through its attorneys, the law firm of Sklar Williams PLLC, hereby files this Reply ("Reply") in support of its Second Motion to Enforce Settlement and for Sanctions against Counter-defendants (ECF No. 66; the "Motion").

This Reply is made and based upon the following Memorandum of Points and Authorities, the exhibits attached hereto, all of the papers and pleadings on file in this action, and any oral argument that the Court may entertain at the hearing on this matter.

Dated this 25th day of April, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*_____
Stephen R. Hackett, Esq.
Nevada Bar No. 5010
David B. Barney, Esq.
Nevada Bar No. 14681
410 South Rampart Blvd, Suite 350
Las Vegas, NV 89145
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

The origin of this case should not be lost on the Court while ruling on the Motion.  Counter-defendants Shiva and Vikhyat Prakash ("Shiva" and "Vikhyat," respectively) told CCTC that their company, Counter-defendant Capital Pure Assets, Ltd. ("Capital Pure"), had "extensive experience and success working with businesses in a variety of industries," and that they could draw upon tens of millions of dollars of funding instantly, from their clients' family offices.  ECF No. 42, at 4.  Those representations led to a joint venture in which Capital Pure promised to deliver a standby letter of credit and millions of dollars of funding to CCTC, for CCTC's use in its projects.  *Id.* at 1, 4-5.  All CCTC had to do was deposit $336,000 into an escrow account held by an attorney with whom Capital Pure had a relationship, Counter-defendant James P. Chrisman ("Chrisman"), through his entity, Counter-defendant James Chrisman, P.C. ("Chrisman P.C."), and then Capital Pure could deliver the funds.  *Id.* at 5-6.

Surely, the Court is aware that these facts are eerily similar to the textbook case of a "standby letter of credit scheme," which the FBI and other agencies have warned the public about for years.  *See, e.g.*, *FBI Warns of Fraud Actors Scamming Investors Through Fictitious Standby Letters of Credit*, FBI Public Service Announcement, I-031819-PSA, https://www.ic3.gov/PSA/2019/PSA190318 (last visited April 25, 2025).  Unfortunately, CCTC relied upon the Counter-defendants' statements and deposited $336,000 into the escrow account held by Chrisman, P.C.  ECF No. 42, at 6.  But the Counter-defendants did not honor **any** of their obligations to CCTC, and CCTC was only able to protect the funds it delivered to the Counter-defendants—though Counter-defendants admit they already spent the initial $336,000 that was deposited—upon the Court's grant of injunctive relief regarding those funds.  *Id.* at 6-11, 14.

The parties litigated this case for almost a year, until they reached a settlement agreement on January 9, 2025.  ECF No. 57, at 3.  Notably, Capital Pure is not receiving **any** compensation for the specious claims it brought when it rushed into court to file this lawsuit.  *See generally* ECF No. 57-2; Capital Pure's Complaint (ECF No. 1), at 12 (alleging it was entitled to "not less than $40,000,000" in damages).  To the contrary, Counter-defendants—and each of them—agreed to

pay CCTC a total amount of $1,336,000, in consideration for CCTC dropping its claims, and for this case to be resolved overall.  ECF No. 57-2, at 1 (defining "Counter-defendants"), 2 ("In consideration of the Recitals, terms and other covenants and conditions set forth herein, **the Counter-defendants** shall pay to CCTC a total sum of One-Million-Three-Hundred-Thirty-Six-Thousand Dollars ($1,336,000).") (bold added).

Not only were they playing games with the Court from day one, *see* ECF No. 1, but apparently unable to defraud other people to pay the amounts they promised to pay CCTC, Counter-defendants now come to the Court with the same stories they told to CCTC all along: "the money is coming next month," ECF No. 22-5, "the holidays have gotten in the way," ECF No. 22-8, "this lawsuit made it difficult for us to raise funds."  ECF No. 69-1, ¶ 4.  And this was after Counter-defendants advised CCTC that they needed the first Quarterly Payment to be on April 1, 2025, because they were selling assets to satisfy that payment amount.  *See* Declaration of David B. Barney, Esq., attached hereto as **Exhibit 1**, ¶ 3.

The question in front of the Court, therefore, is how long will this "gaslighting" continue? At some point, Counter-defendants must be held to their promises, as both CCTC and the Court have already given them chance after chance to comply.  The Court should order the Counter-defendants to comply with their obligations in the Settlement Agreement, and it should retain jurisdiction over this matter to ensure their compliance with the Court's orders.  Otherwise, Counter-defendants will continue to escape both their promises and legal obligations to the Court and CCTC, with impunity.

## II.      LEGAL ARGUMENT

### A.      Enforcement of the Settlement Agreement is Appropriate and Warranted.

Counter-defendants argue that the Court should not enforce the Settlement Agreement, because the appropriate remedy is CCTC filing a new lawsuit and/or the confession of judgment. ECF No. 69, at 2-3.  While that may have been accurate several months ago, the Counter-defendants cannot simply ignore their failures to (i) comply with the provisions of the Settlement Agreement that would have required CCTC to dismiss this case, or (ii) comply with the Court's orders requiring their performance.  Now that months have passed, and the Counter-defendants

have not only breached the Settlement Agreement in several ways but advised that they either cannot or do not intend to perform in the future, ECF No. 69, at 2-3 (disingenuously arguing that only Capital Pure—an entity that was dissolved improperly two weeks ago, *see* Secretary of State Records attached hereto as **Exhibit 2**—has payment obligations under the Settlement Agreement), ECF No. 69-1, ¶ 4, they have waived their right to enforce the agreement against CCTC, by requiring it to follow the bargained for terms. *See Leach Logistics, Inc. v. CF USA, Inc.*, 751 F. Supp. 3d 1087, 1096 (D. Nev. 2024) (quoting *Cain v. Price*, 415 P.3d 25, 29 (Nev. 2018)) (providing that a party injured by another party's breach of contract "is both excused from its contractual obligation[s] and entitled to seek damages for the other party's breach.") (internal quotations omitted).

This case is now in a posture where the Counter-defendants are fighting unambiguous terms that they agreed to, and that the Court has already enforced. *See* ECF No. 69, at 2-3; ECF No. 62, at 7. They cannot try to re-negotiate the terms of the Settlement Agreement now, nor can they avoid the language they agreed to months ago. It is clearer than ever that the Court's enforcement of the Settlement Agreement is necessary, in light of the Counter-defendants' continued flouting of its terms, as well as the policy behind such action.

As this Court has stated in clear terms, "[h]olding parties to the terms of executed and valid settlement agreements is critically important." ECF No. 62, at 3 (quoting *Harper v. Nev. Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1045 (D. Nev. 2021)). "The interests of equity, judicial economy, and finality all militate strongly against efforts to renege on a settlement," and district courts have inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 2-3. As detailed in the Motion, Counter-defendants have now breached the Settlement Agreement by: (i) failing to make the initial payment of $14,000, (ii) consequently failing to release the $336,000 held in the Court registry to CCTC, and (iii) failing to make the first Quarterly Payment of $123,250. ECF No. 66, at 5-9. This, notwithstanding the Court's prior order to make the initial payment by noon on April 21, 2025, and the Counter-defendants' continued failure to abide by their obligations or the Court's orders. The Counter-defendants have made it abundantly clear that in the absence of a Court order requiring them to comply with the

Settlement Agreement—and even then it is doubtful—they have no intention of honoring their contractual settlement payment obligations to CCTC. As the Court has recognized in its previous Order dated April 17, 2025 (ECF No. 62), it has the inherent authority to enforce the Settlement Agreement, and such relief is warranted based on the Counter-defendants' continued attempts to play games with the Court and CCTC.

To address a final contention raised by the Counter-defendants on this issue, they argue that the Court's enforcement of Section 2(c) of the Settlement Agreement, *i.e.*, their obligation to make the first Quarterly Payment, is premature in light of the "Cure Period" in Section 2(h) of the contract, and otherwise not appropriate in light of CCTC's ability to file the confession of judgment. ECF No. 69, at 3. This argument is belied by the clear terms of the Settlement Agreement.

As addressed in previous briefing, *see* ECF No. 61, at 7-8, the clear and unambiguous language of the Settlement Agreement provides that the Counter-defendants—specifically defined as Capital Pure, Shiva, Hannah Dawn Prakash, Vikhyat, Chrisman, P.C., and Chrisman—"shall pay to CCTC a total sum of One-Million-Three-Hundred-Thirty-Six Thousand Dollars ($1,336,000.00)." ECF No. 57-2, at 1 (definition), 2 (Section 2). The agreement further provides that "[c]oncurrently with their execution and delivery of this Agreement and the Confession of Judgment . . . , **Counter-defendants** shall deliver to CCTC's counsel  . . . a certified check or cashier's check in the amount of Fourteen-Thousand Dollars ($14,000.00)." *Id.* at 2 (Section 2(a)) (bold added).

With regard to their obligation to make each Quarterly Payment, the contract provides that "[b]eginning on April 1, 2025, and continuing for a period of twenty-one months thereafter, the **Counter-defendants** shall make eight (8) quarterly payments to CCTC in the amount of One-Hundred-Twenty-Three-Thousand-Two-Hundred-Fifty Dollars ($123,250.00)." *Id.* at 2 (Section (2)(c)) (bold added). There can be no reasonable dispute that the Counter-defendants—and each of them as defined in the Settlement Agreement—are all jointly and severally responsible to make each and every one of these payments to CCTC.

Sections 2(h) and 2(i) of the Settlement Agreement are irrelevant to the issue of who is

required to pay the full Settlement Amount to CCTC, and when those payments are due. Rather, Section 2(h) and (i) apply only to CCTC's ability to file a confession of judgment against Shiva and Capital Pure. ECF No. 57-2, at 3-4 (Section 2(h)-(i)). If CCTC seeks to do so, it must follow the proper procedure, including the notice and cure period set forth in Section 2(h) and (i). *Id.* But the contract provides that "CCTC's election to file the Confession of Judgment, or to not file it, shall not affect any other rights or remedies available to CCTC in connection with [the Settlement Agreement]." ECF No. 57-2, at 3-4 (Section 2(i)). This includes its ability to pursue its contractual rights against the other Counter-defendants, even if they are not able to immediately skip to a confessed judgment against them.

If the parties intended for **only** Shiva and Capital Pure to have payment obligations under the Settlement Agreement—CCTC would never have agreed to do so because it knew Capital Pure would do something like improperly dissolve the entity while it has significant liability, *see* ECF No. 69-1, ¶ 2; Exhibit 2—they would have included those terms expressly limiting the payment obligations to Shiva and Capital Pure in the Settlement Agreement. But the parties did the opposite, by ensuring that **all** of the Counter-defendants are contractually obligated to pay the Settlement Amount of $1,336,000, even if CCTC also has the remedy of filing a confession of judgment against only two of them. *See* ECF No. 57-2, at 2-4. Because the notice and cure period (which expires in a few days in any case) only applies to CCTC's ability to file the confession of judgment, and because CCTC's election to do so does "not affect any other rights or remedies available to CCTC in connection with [the Settlement Agreement]," the cure period has no effect on CCTC's rights to pursue a claim for breach of contract, or on the enforcement of the Counter-defendants' contractual obligation to make the Quarterly Payments. The Court should enforce the Settlement Agreement as requested in the Motion. ECF No. 66, at 6-9.

### B. The Court has Authority, and May Continue to Have Authority, to Enforce the Settlement Agreement.

Counter-defendants argue that the Court does not have jurisdiction to enforce the Settlement Agreement, because CCTC's request for such relief is based on "a hypothetical future default." ECF No. 69, at 3. The Court has already found this is not true. In its Order dated April

7

17, 2025 (ECF No. 62), the Court found that the Counter-defendants breached the agreement by failing to make the Initial Payment. ECF No. 62, at 4-6. There is also no reasonable dispute that the Counter-defendants have failed to take steps necessary that would have allowed CCTC to receive the funds in the Court registry, and there is no dispute that the Counter-defendants have not made the initial Quarterly Payment. ECF No. 66, at 6-9. Accordingly, there are several breaches which are concrete and undisputed, and so the Counter-defendants' argument has no merit.

In addition, Counter-defendants have all but advised the Court that they do not intend to make the remaining payments to CCTC, when they become due. *See* ECF No. 69, at 2-3 (arguing that only Capital Pure has payment obligations under the Settlement Agreement); ECF No. 69-1, ¶ 2 (stating that Capital Pure "has been formally dissolved and currently has no operating revenue or active business assets"); Exhibit 2 (showing that Capital Pure was improperly dissolved **two weeks ago**, long after the parties agreed to enter into the Settlement Agreement). Their prior breaches of the Settlement Agreement, as well as their repudiation of its terms, make clear that the Court's enforcement of the Settlement Agreement is necessary, to avoid the Counter-defendants continuing games and "gaslighting," in connection with the Settlement Agreement. There is no dispute that the Court has authority to enforce the Settlement Agreement before dismissal is entered, and it should do so until the Counter-defendants have complied with their payment obligations thereunder. *See, e.g.*, ECF No. 62, at 2 (citing *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957-58 (9th Cir. 2021)) ("Courts possess inherent authority to enforce settlement agreements in pending cases.").

With regard to retaining jurisdiction over enforcement of the Settlement Agreement if the Court dismisses this matter before the Counter-defendants satisfy all of their payment obligations, the Court has authority to do so. Counter-defendants argue that a dismissal of this case by the Court, rather than by a stipulation of the parties, would either not be a dismissal under Fed. R. Civ. P. 41(a)(2), or if it was, would not enable the Court to retain jurisdiction over the Settlement Agreement. In both cases, the Counter-defendants are wrong.

With regard to the first contention, courts have held that Rule 41(a)(2) applies broadly, to

all dismissals by the Court which are not taken under Fed. R. Civ. P. 41(a)(1). *See Pedroza v. Lomas Auto Mall, Inc.*, 304 F.R.D. 307, 326-27 n.10 (D. N.M. 2014) (providing that "Rule 41(a)(2) . . . governs all dismissals undertaken by way of a court order"). The parties in this case are long past the point where they were required to file the stipulation and order for dismissal pursuant to the procedure outlined in the Settlement Agreement. ECF No. 57-2, at 2 (Section 2(b)). That procedure was precluded by the Counter-defendant's breach of the Settlement Agreement by failing to deliver the initial payment and failing to release the $336,000 held in the Court registry to CCTC. Therefore, the parties' request for a dismissal, should the Court find it necessary before the Counter-defendants' payment obligations are satisfied, is a request under Rule 41(a)(2), which is made in the Court's discretion and upon terms decided by the Court. *See* Fed. R. Civ. P. 41(a)(2).

Contrary to the Counter-defendants' argument that CCTC has not cited any authority to show that a court may maintain jurisdiction over an action through a Rule 41(a)(2) dismissal, the United States Supreme Court in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) expressly made that holding: "In the event of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2), **the court may, in its discretion, make the parties' compliance with the terms of [a] settlement agreement (or retention of jurisdiction over the agreement) part of its order**." *See Kokkonen*, 511 U.S. at 375 (bold added). A number of other courts have emphasized this principle. *See, e.g.*, *Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1269 (9th Cir. 1996) (holding that a district court had discretion to retain jurisdiction over a settlement agreement post-dismissal, and that it also had discretion to terminate that jurisdiction at the appropriate time); *Pedroza*, 304 F.R.D. at 336-37 n.17 (concluding that a court "could retain jurisdiction in the absence of any or all parties' consent, or even in the face of their joint opposition"); *Brass Smith, LLC v. RPI Indus., Inc.*, 827 F. Supp. 2d 377, 281 (D. N.J. 2011) ("Whether or not a court decides to retain ancillary jurisdiction over [a] settlement agreement is discretionary."). Accordingly, the decision of whether retention of jurisdiction over the settlement agreement is appropriate is one that falls squarely within the Court's discretion, and it is not one which is as narrow as the Counter-defendants would like it to be. As a result, if the Court determines this case should be dismissed at any time prior to the Counter-defendants satisfying their obligations, it should retain jurisdiction over the Settlement

Agreement, to avoid an unjust result and to avoid the parties having to waste judicial resources through the filing of a new lawsuit to enforce the Settlement Agreement, which this Court is already fully familiar with and which it has already enforced in the action giving rise to the Settlement Agreement.

          C.       **The Court's Imposition of Contempt Sanctions and Sanctions Resulting from the Counter-defendants' Breach is Appropriate.**

It does not appear that the Counter-defendants oppose an award of sanctions resulting from their numerous breaches of the Settlement Agreement, except for a misplaced comment asserting that the Quarterly Payment breach is premature. ECF No. 69, at 1-2; *see also* discussion, *supra* at 6-7 (dispensing with that argument). The only thing Counter-defendants appear to argue is that the Court should not hold them in contempt, because they have faced unexpected hardship and cannot now satisfy their payment obligations under the Settlement Agreement. ECF No. 69, at 1. This argument does not satisfy the Counter-defendants' burden in resisting a finding of contempt.

On January 9, 2025, the parties agreed to the terms of the Settlement Agreement. ECF No. 57, at 3. At that time, Counter-defendants evaluated their affairs, negotiated with CCTC, and agreed that they could pay $14,000 to CCTC, when the agreement was signed. ECF No. 57-2, at 2 (Section 2(a)). They delayed their signatures a month, and even after the first motion to enforce settlement was briefed, they did not pay that amount to CCTC. ECF No. 66-2, ¶ 3. On April 17, 2025, the Court gave Counter-defendants a final opportunity—more than three months after they agreed to do so—to pay the $14,000 and move forward with the case, before potentially suffering additional consequences. ECF No. 62, at 7. Counter-defendants failed to comply with the Court's order. ECF No. 66-2, ¶ 3.

When looking at Shiva's Declaration, what is not contained in the Declaration is notable. As the Court will see, Shiva uses careful language, stating that "[he], personally, do[es] not currently have access to funds or investment sources sufficient to satisfy the outstanding balance under the Settlement Agreement." ECF No. 69-1, ¶ 2. But what about Hannah? What about Vikhyat? What about Chrisman? What about Chrisman, P.C.? Counter-defendants have shown absolutely no evidence sufficient to show that they actually tried to comply with their obligation

to deliver the Initial Payment—which they knew would come due for more than three months—or that they actually tried to comply with the Court's orders.

Instead, they rebuke the Court's orders by defiantly stating that only Capital Pure is bound by the same, *see* ECF No. 62, at 7 (requiring all of the Counter-defendants to make the payment), and because it and Shiva, personally, cannot pay a bill they agreed to and knew was coming for several months, they have shown the Court they did everything possible to comply with the Court's orders.  There is simply no discussion of any efforts taken by the Counter-defendants, that would show they tried to comply.  Because the Counter-defendants have failed to satisfy their burden of showing why they were unable to comply with the Court's orders, the Court should hold them in contempt and award the sanctions requested in the Motion.  *See F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citing *Stone v. City and Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)); ECF No. 66, at 13-15.

/ / /

/ / /

/ / /

## III.   CONCLUSION

In light of the above, the Court should enforce the terms of the Settlement Agreement by ordering the Counter-defendants to comply with their obligations thereunder, including (i) delivering the initial payment of $14,000 to CCTC, and (ii) making the Quarterly Payment of $123,250 to CCTC, immediately.  The Court should also release the funds held in the Court registry to CCTC and retain jurisdiction over this matter, either pre- or post-dismissal, to ensure the Counter-defendants comply with the terms of the Settlement Agreement and to conserve the Court's and the parties' resources.  Finally, the Court should impose both contempt sanctions and sanctions regarding the Counter-defendants' repeated failure to comply with the Settlement Agreement and the Court's orders, by awarding CCTC its reasonable attorneys' fees and costs incurred as a result of the Counter-defendants' conduct, and by requiring the Counter-defendants to pay interest on all late amounts owed under the Settlement Agreement, until paid in full.

Dated this 25th day of April, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*_____
Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
410 South Rampart Blvd., Ste 350
Las Vegas, Nevada 89145
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the 25th day of April, 2025, a true and correct copy of the above and foregoing **DEFENDANT/COUNTERCLAIMANT CC TECHNOLOGY CORPORATION'S REPLY IN SUPPORT OF SECOND MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS AGAINST COUNTER-DEFENDANTS** was filed electronically with the Clerk of the Court by submission to the electronic filing and service system (CM/ECF) at the United States District Court, District of Nevada.  CM/ECF will provide copies to all parties and counsel of record registered to receive CM/ECF notification.

*/s/ Jessica Uriostegui*
An employee of Sklar Williams PLLC

## INDEX OF EXHIBITS

**EXHIBIT**      **DESCRIPTION**

1           Declaration of David B. Barney, Esq.

2           Secretary of State Information Page for Capital Pure Assets, Ltd.