# EXHIBIT 1

Declaration of David B. Barney, Esq.

Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile:  (702) 360-0000
Email: shackett@sklar-law.com
        dbarney@sklar-law.com
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CAPITAL PURE ASSETS, LTD, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CC TECHNOLOGY CORPORATION, a Colorado corporation; DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-00680-NJK<br><br><br>**DECLARATION OF DAVID B. BARNEY, ESQ. IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT CC TECHNOLOGY CORPORATION'S MOTION TO CALCULATE SANCTIONS** |
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br><br>Counterclaimant,<br><br>v.<br><br>CAPITAL PURE ASSETS, LTD, a Nevada limited liability company; SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, an individual; VIKHYAT PRAKASH, an individual; JAMES CHRISMAN, P.C., a Nevada professional corporation; JAMES P. CHRISMAN, an individual; DOES 1 through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br><br>Counter-defendants. | |

1

I, David B. Barney, Esq., declare as follows:

1.      I am an attorney duly licensed to practice law in the State of Nevada.  I am a member of the law firm Sklar Williams PLLC, counsel of record for Defendant/Counterclaimant CC Technology Corporation ("CCTC") in the above-captioned matter.  I make this Declaration in that capacity, and in support of CCTC's Motion to Calculate Sanctions (the "Motion")

2.      I make this Declaration based upon my own personal knowledge, and if called upon to testify to the matters set forth herein, I could and would competently do so.

3.      After months of negotiations, the parties reached a settlement of this matter on December 23, 2024.  On December 26, 2024, I sent a draft of the settlement documents to counsel for the Plaintiff and Counter-defendants, Capital Pure Assets, Ltd, Shiva Prakash, Hannah Dawn Prakash, Vikhyat Prakash, James Chrisman, P.C., and James P. Chrisman (collectively, "Counter-defendants").  Counter-defendants' counsel responded with proposed changes on January 7, 2025.

4.      On January 9, 2025, I sent a few proposed revisions to the latest version of the settlement documents, to Counter-defendants' counsel.  Counter-defendants accepted the changes, with the exception of replacing one semicolon with a comma.  These documents became the finalized version of the Mutual Release and Settlement Agreement between the parties (the "Settlement Agreement"), which sets forth the terms of a global resolution of the issues between them, including the resolution and dismissal of this lawsuit.

5.      Notwithstanding the parties' agreement to the January 9 version of the settlement documents, Counter-defendants forced CCTC to incur additional costs and attorneys' fees unnecessarily, by delaying their entry into and performance of the Settlement Agreement.  This included the parties' request that the Court extend the discovery deadlines, to allow the parties to finalize the settlement documents and effectuate the settlement.  When the Court granted the parties' request, it ordered them to file a joint status report regarding settlement by February 7, 2025, if dismissal papers had not been filed by that date.

6.      After the Court ordered the parties to do so, I followed up with the Counter-defendants multiple times, to check on the status of the settlement documents and move things forward.  Counter-defendants' counsel advised that the Counter-defendants were traveling, and

2

that this caused some delay.  Because the parties were not in a position to dismiss this case by February 7, 2025, they filed a first Joint Status Report regarding Settlement (the "First Status Report") in accordance with the Court's orders.

7.    After the parties filed their First Status Report, and the Court entered a Minute Order on the same, I continued trying to move things forward with the settlement, but I was met with no movement on the part of the Counter-defendants.  In fact, on or about February 13, 2025, Counter-defendants advised that they did not intend to move forward with the Settlement Agreement as written, and that they wanted to change certain terms to which the parties had already agreed.  In response, I advised that CCTC intended to move forward with the agreement that was already made by the parties, and that CCTC would have no choice but to file a motion to enforce settlement if the Counter-defendants refused to follow through with the agreement.

8.    On February 19, 2025, apparently as a means of staving off a motion to enforce settlement, Counter-defendants provided CCTC with an executed copy of the Settlement Agreement.  In the same correspondence, Counter-defendants' counsel advised: "Once we have the Initial Payment check from CPA we will have a runner deliver both the check and the original Confession of Judgment to your office."  This was in line with the terms of the Settlement Agreement, which required that concurrently with the mutual execution thereof, Counter-defendants would deliver to CCTC's counsel (i) an "Initial Payment" of $14,000, and (ii) an original copy of the Confession of Judgment signed by certain Counter-defendants, after which the parties would stipulate to dismiss this case.

9.    I held off on filing a motion to enforce settlement, based on the understanding that the Initial Payment and original Confession of Judgment were on their way.  But after reaching out several more times, the Counter-defendants had not delivered these items to my office, nor would they even give CCTC a timeframe in which they agreed to do so.  As a last-ditch effort to secure the Counter-defendants' performance of the agreement before motion practice, I advised the Counter-defendants that if the Initial Payment and original Confession of Judgment were not delivered by the close of business on February 25, 2025, CCTC would have no choice but to file a motion to enforce settlement.

3

10. February 25 came and went, and the Counter-defendants still had not delivered the Initial Payment or the original Confession of Judgment in accordance with the terms of the Settlement Agreement.

11. Upon information and belief, and based on the information set forth below, CCTC's costs of $1,554.87, and its attorney fees of $14,831, were reasonably and necessarily incurred in this matter and should be awarded under the lodestar method and *Brunzell* factors, and in accordance with LR 54-14.

**1.      The Qualities of the Advocates (*Brunzell* Factor 1; LR 54-14(3)(F),(I),(G))**

12. Sklar Williams PLLC ("SW") is a premier law firm in Nevada. The firm was recognized as one of the country's leading firms in the "Best Law Firms" rankings for 2025, by The Best Lawyers in America. The firm has also been rated an AV Preeminent law firm by Martindale-Hubbell for many years.

13. Stephen R. Hackett, Esq. is CCTC's lead counsel in this matter, and he has over thirty years of experience as a commercial litigator. Mr. Hackett's hourly rate in this matter, for the relevant time period, is $565 per hour. Mr. Hackett was awarded a *Juris Doctorate* degree *cum laude* from California Western School of Law in 1991, where he served as the Articles Editor on the Law Review and, thereafter, worked as a law clerk for a federal judge on the United States Court of Appeals for the Sixth Circuit for one year, until 1992. He sat for and passed the California Bar and was admitted in 1992, and he then sat for and passed the Nevada Bar and was admitted in 1993. Mr. Hackett is admitted to practice in all courts of the State of California and the State of Nevada, as well as the United States District Court of the District of Nevada and the United States Court of Appeals for the Ninth Circuit.

14. Mr. Hackett was previously employed as an associate attorney for seven (7) years and then became a shareholder for four (4) years at Lionel Sawyer & Collins, Nevada's largest law firm at the time, until leaving the firm in 2003. During that time, Mr. Hackett practiced primarily as a commercial litigator handling arbitrations, trials, appeals, and all other manner of complex commercial disputes, including complex business disputes and shareholder/member derivative

actions and class actions, as well as numerous disputes involving joint venture agreements and other investor disputes, similar to the present case.

15.    From 2003 to 2010, Mr. Hackett was the Managing Director for the Las Vegas office of an international development company and oversaw the construction of hundreds of millions of dollars in high rise condominium and other development projects and a staff of over fifty employees.  Mr. Hackett joined SW in 2010, and he has been practicing commercial litigation with the firm since that time.  Over his career, Mr. Hackett has litigated hundreds of cases from initiation through mediation, arbitration, trial and appeal.  Upon information and belief, the rate of $565 per hour is consistent with the rates for similar services for attorneys with similar training and experience in the local area and is reasonable for this type of litigation work in Las Vegas, Nevada, during the time period in which this case has been pending.

16.    Mr. Hackett has been assisted in this matter by David B. Barney, Esq.  Mr. Barney was awarded a *Juris Doctorate* degree *cum laude* from the Pepperdine School of Law in December 2017, where he served as an Associate Editor of the Pepperdine Law Review and was published twice in the same publication.  During law school, Mr. Barney externed for two federal district court judges, and he joined SW as a post-graduate law clerk in early 2018, where he has been practicing primarily in the areas of commercial litigation and administrative law ever since.  Mr. Barney sat for and passed the Nevada Bar in 2018, and he is admitted to practice in all courts of the State of Nevada, as well as the United States District Court for the District of Nevada and the United States Court of Appeals for the Ninth Circuit.

17.    Since starting as an attorney at SW, Mr. Barney has litigated a number of cases in state and federal court, and he has also handled a number of arbitrations and appeals in both the Nevada Supreme Court and the United States Court of Appeals for the Ninth Circuit.  These cases have involved complex disputes, including shareholder/member derivative matters, constitutional matters, and matters involving joint venture agreements and other investor disputes, similar to the present case.  In 2025, Mr. Barney became a partner of SW.  Upon information and belief, the rate of $375 per hour is consistent with the rates for similar services for attorneys with similar training and experience in the local area and is reasonable for this type of litigation work in Las Vegas,

5

Nevada, during the time period in which this case has been pending.  SW's fees in this matter were incurred on an hourly basis, and not on a contingent basis.

**2.      The Character of the Work to Be Done (*Brunzell* Factor 2; LR 54-14(3)(B)(C)(D))**

18.      This matter involved CCTC defending a claim against it for over $40,000,000, pursuing recovery of amounts that were extracted from CCTC by fraudulent means, obtaining injunctive relief to ensure that CCTC could recover those amounts it lost by way of the Counter-defendants' conduct, and vigorous litigation against three sets of opposing counsel.  After approximately nine months of such litigation, CCTC and the Counter-defendants engaged in lengthy negotiations, which resulted in a settlement of this matter in its entirety.

19.      CCTC's counsel worked to draft and negotiate a complex settlement agreement, which ensured that CCTC would recover the amounts that it delivered to the Counter-defendants before this litigation, as well as additional funds to be made whole in light of its additional damages.  The settlement was secured by a Confession of Judgment from several of the Counter-defendants, and the remaining Counter-defendants became bound by a promise to pay CCTC the total settlement amount.  This settlement agreement not only ensured that CCTC would be made whole in light of the damages caused by the Counter-defendants, but it also resulted in the complete release of CCTC, as well as its personnel, from Plaintiff Capital Pure Assets, Ltd.'s claim for $40,000,000.

20.      Notwithstanding the work that went into the drafting, negotiation, and completion of the Settlement Agreement, Counter-defendants failed to comply with the same.  To ensure that CCTC received the benefit to which it was entitled under the parties' agreement, CCTC's counsel had to hold the Counter-defendants to their burden of completing and performing under the Settlement Agreement, including constant communication with opposing counsel and, ultimately, briefing a motion to enforce the Settlement Agreement and for sanctions against the Counter-defendants.  This work required a great deal of persistence, including a careful review of the parties' agreements and review and analysis of the parties' rights thereafter, once the Counter-defendants breached the Settlement Agreement.

6

**3.    The Work Actually Performed by the Attorneys (*Brunzell* Factor 3; LR 54-14(1),(3)(A),(B), (H))**

21.    SW negotiated, drafted, and finalized a complete agreement that would make CCTC whole and resolve this case in its entirety, including the complete release of Capital Pure Assets, Ltd.'s claims against CCTC.  Once the settlement terms were agreed upon, CCTC's counsel was required to be in constant communication with both CCTC and the Counter-defendants' counsel, to (i) secure the Counter-defendants' compliance with the Settlement Agreement, (ii) prepare, negotiate and finalize multiple status reports required by the Court as a result of the Counter-defendants' refusal to complete their entry into the Settlement Agreement and then dismiss this case, and (iii) respond to the Counter-defendants' attempts to renege on their entry into the Settlement Agreement in its entirety.  When the Counter-defendants continuously refused to comply with their obligations under the Settlement Agreement, CCTC's counsel reviewed the relevant law and engaged in a detailed review of the Settlement Agreement, before it drafted the Motion to Enforce Settlement and responded to the arguments made by the Counter-defendants in their opposition thereto.

22.    The billing history and time slips attached hereto as **Exhibit 2** detail the hours worked and the amounts billed to each task by date, for the relevant time period of January 9, 2025, through the briefing on the Motion to Enforce Settlement.  These bills were reviewed and edited, and CCTC respectfully submits that the fees and costs charged are reasonable.  Based on the Counter-defendants' delay and their promises to dismiss this case on an ongoing basis to CCTC and the Court, CCTC needed to act swiftly to (i) limit CCTC's continuing harm based on a delay in the dismissal of this case and of its receipt of the funds it was entitled to receive as part of the settlement, and (ii) comply with the Court's orders regarding multiple status reports regarding settlement and the timeframe to file a motion to enforce.

**4.    The Result (*Brunzell* Factor 4; LR 54–14(3)(A))**

23.    SW's representation was successful in achieving a number of desired results for CCTC, including: (i) a release of the claims against CCTC, (ii) recovering the $336,000 that CCTC had previously deposited with the Counter-defendants, and (iii) resolving this case in a manner

7

that seeks to ensure CCTC is made whole over time.  Furthermore, after the Counter-defendants refused to complete their entry into and/or comply with the terms of the Settlement Agreement that would enable CCTC to recover an amount of $350,000 immediately, CCTC's counsel was vigilant in ensuring that the Counter-defendants were held to the terms of the Settlement Agreement, and that they were required to comply with the terms thereof, inasmuch as the Court has granted the Motion to Enforce Settlement.  CCTC also prevailed on the Motion to Enforce Settlement, by being granted a sanction against CCTC, to be determined upon the Court's review of this Motion and related briefing.

### 5.    Remaining Factors (LR 54-14(a)(3)(E), (J))

24.    Aside from the time incurred by SW in connection with these matters, including in connection with the tasks set forth above, SW was not precluded, by way of conflict or any other similar issue, from taking other employment based on an acceptance of this case.  The factor of undesirability is neutral, inasmuch as there was not some public or reputational risk to SW based on its litigation of this matter.  The award in this case is on par, if not minimal, compared to awards in similar cases, such as *Harper v. Nevada Property 1, LLC*, 552 F. Supp. 3d 1033, 1054 (D. Nev. 2021) (awarding $16,414 based on a motion to enforce settlement and for sanctions); *Leverty & Associates Law Chtd v. Exley*, No. 3:17-cv-00175-MMD-WGC, 2019 WL 913096, at *5 (D. Nev. Nov. 5, 2018) (awarding $45,045 based on a motion to enforce settlement and for sanctions).

25.    Finally, a list of the costs which are taxable under LR 54-1 through 54-13, as well as those that CCTC seeks to recover under LR 54-14(a)(2), is attached hereto in Exhibit 2, at 8-9. In light of the information set forth above, and based upon the *Brunzell* factors, the lodestar method, and LR 54-14, CCTC respectfully submits that its costs and attorney fees are reasonable and should be awarded, in the amounts of $1,554.87 and $14,831, respectively.

I declare under penalty of perjury that the foregoing is true, to the best of my knowledge, information and belief.

Dated this 8th day of May, 2025.

*/s/ David B. Barney*_____
DAVID B. BARNEY, ESQ.

8